Richard C. TULOWITZKI, Plaintiff
below, Appellant,

v.

ATLANTIC RICHFIELD COMPANY,
Defendant below, Appellee.

Supreme Court of Delaware.

Submitted March 17, 1978.

Decided Nov. 1, 1978.

Steven D. Goldberg, of Theisen, Lank, Mulford & Goldberg, Wilmington, for plaintiff below, appellant.

Louis J. Finger, of Richards, Layton & Finger, Wilmington, for defendant below, appellee.

Before HERRMANN, Chief Justice, BIFFERATO and LONGOBARDI, Judges.

HERRMANN, Chief Justice:

The plaintiff, Richard C. Tulowitzki, appeals the Chancery Court's decision that the relationship between Tulowitzki and the defendant Atlantic Richfield Company was not a "franchise" under Delaware's Franchise Security Law, 6 *Del.C.* § 2551 *et seq.*, or under the developing franchise case law; and that the vapor recovery equipment agreement that Atlantic required plaintiff to sign as part of a lease renewal was neither unconscionable nor in violation of the Delaware Retail Sales of Motor Fuel Law, 6 *Del.C.* Ch. 29.

I.

Tulowitzki has operated an Atlantic automobile service station in Delaware since 1968. The relationship between Tulowitzki and Atlantic has been governed by Atlantic's lease to Tulowitzki of its service station, including land, buildings, pumps, appliances, furniture and tools. The lease authorized the use by Tulowitzki of Atlantic's trademarks in connection with the sale of Atlantic's products; and it provided that unless Atlantic found specific grounds for non-renewal, its policy was to renew with any lessee whose yearly sales of motor vehicle fuel exceeded 250,000 gallons. Tulowitzki's sales exceeded that figure.

As the July 31, 1976 expiration date on Tulowitzki's lease approached, he was sent a new lease, the terms of which were basically the same as the previous lease. But there was a new addendum calling for rent for certain vapor recovery equipment which the Federal Environmental Protection Agency (EPA) might require at Tulowitzki's station.[1] At the time, Atlantic was uncertain whether EPA would require the installation of any additional equipment, but it inserted this provision in all of its leases in order to prepare the parties for that event. The addendum required Tulowitzki to pay Atlantic $17.54 additional rental per month for each $1,000 of Atlantic's costs for the purchase, installation and maintenance of the vapor recovery equipment; and it provided that this cost would be computed on the basis of the average expenditures made by Atlantic throughout its system of stations rather than the actual cost of the equipment required at Tulowitzki's station itself. Tulowitzki refused to sign the lease renewal because he objected to the vapor recovery addendum, whereupon he was informed by Atlantic that if he did not sign the lease by August 1, 1976, the company would stop delivery of its products, refuse to honor any credit card sales made after that date, and would probably remove the ARCO identification forthwith. Atlantic rejected the suggestion that Tulowitzki be allowed to renew without signing the vapor recovery addendum to the lease. When Tulowitzki failed to sign by the deadline, his deliveries of Atlantic products were terminated. He thereupon obtained a temporary restraining order to maintain a supply of Atlantic petroleum products. Since Atlantic had no objection to Tulowitzki's continuation as a lessee-dealer except for his refusal to sign the vapor recovery addendum, the preliminary injunction stage was by-passed and the par-

---

1. Although the addendum does not mention vapor recovery equipment specifically, and defines equipment generally as "any equipment . . . as may from time to time be required at the Premises by any governmental agency," this litigation has proceeded with the understanding that the addendum refers to vapor recovery equipment that might be required by the EPA. This addendum was added to the leases of all of Atlantic's area dealers; Tulowitzki was the only dealer who refused to sign.

ties proceeded to trial on the merits. Judgment was entered in favor of Atlantic, and the restraining order was dissolved. Tulowitzki appeals.

## II.

The essential issue presented is whether it is unfair or unconscionable for Atlantic to require Tulowitzki to sign the vapor recovery addendum as a condition to the renewal of his service station lease.[2] Tulowitzki contends that the relationship between the parties constituted a franchise, either under the Franchise Security Law or under the developing case law [e. g. *Shell Oil Co. v. Marinello*, 63 N.J. 402, 307 A.2d 598 (1973)], and the relationship thus has the protection of the rule that a franchisor may not "unjustly" fail to renew a franchise. See 6 *Del.C.* § 2552.[3] The crux of Tulowitzki's theory is that by insisting that he sign the vapor recovery equipment addendum as a precondition to renewal, Atlantic "constructively refused to renew" the lease without "good cause," or acted in "bad faith," thus "unjustly" failing to renew the lease in violation of § 2552.

The Court of Chancery held that there was no franchise under the Franchise Security Law because Tulowitzki sold products bearing the name of more than three manufacturers and therefore was not a "franchised distributor" under 6 *Del.C.* § 2551(1)(b).[4] The Trial Court also held the

2. This Court has noted 42 U.S.C. §§ 7624 and 7625, which deals with the burden for the cost of vapor recovery equipment. As this Statute did not become an issue in this case and we lack the factual basis to decide whether the Statute applies, or the effect of such application, we have proceeded to the merits of the controversy as presented, by deciding the issue of whether the vapor recovery equipment addendum is unconscionable.

3. 6 *Del.C.* § 2552 provides:
   "§ 2552. Unjust termination of, or failure to renew, a franchise.
   "(a) Termination of a franchise by a franchisor shall be deemed to be 'unjust,' or to have been made 'unjustly,' if such termination is without good cause or in bad faith. Any termination of a franchise which is not unjust shall be deemed to be 'just,' or to have been made 'justly.'
   "(b) The failure of a franchisor to renew a franchise shall be deemed to be 'unjust,' or to have been made 'unjustly,' if such failure to renew is without good cause or in bad faith. Any failure to renew a franchise which is not unjust shall be deemed to be 'just,' or to have been made 'justly.'
   "(c) A provision of a franchise which permits a franchisor to terminate that franchise, which provision does not specify the grounds upon which such termination may be made, shall be construed to permit the franchisor to make only a just termination.
   "(d) A provision of a franchise which permits a franchisor to fail to renew that franchise, which provision does not specify the grounds upon which such failure to renew may be made, shall be construed to permit the franchisor only justly to fail or refuse to renew.
   "(e) A provision in a franchise permitting a franchisor to make an unjust termination of a franchise is against the public policy of this

State and shall not be enforced in the courts of this State.
   "(f) A provision in a franchise permitting a franchisor unjustly to fail or refuse to renew a franchise is against the public policy of this State and shall not be enforced in the courts of this State.
   "(g) No franchisor may unjustly terminate a franchise.
   "(h) No franchisor may unjustly fail or refuse to renew a franchise.
   "(i) No franchisor may unjustly refuse to deal with a franchised distributor with whom the franchisor has been dealing for at least 2 years."

4. "§ 2551. Definitions.
   "As used in this chapter, unless the context otherwise requires:
   "(1) 'Franchised distributor' means an individual, partnership, corporation, or unincorporated association with a place of business within the State, and engaged in the business of:
      "(a) Purchasing or taking on consignment products which bear the trademark or trade name of the manufacturer, producer or publisher for the primary purpose of selling such products to retail outlets; or
      "(b) Selling in or through retail outlets products which bear the trademark or trade name of no more than 3 manufacturers, producers, publishers, trademark licensors, or trade name licensors; or
      "(c) Purchasing or taking on consignment, books, magazines, journals, newspapers, or other publications for the primary purpose of selling such publications to retail outlets.
   "(2) 'Franchisor' means an individual, partnership, corporation or unincorporated association in the business of:
      "(a) Distributing or selling to one or more franchised distributors, on its own behalf or

Franchise Security Law inapplicable because Tulowitzki had not paid "more than $100 to enter into such contract or other arrangement." 6 *Del.C.* § 2551(3). On the basis of *Globe Liquor v. Four Roses Distillers Co.*, Del.Supr., 281 A.2d 19 (1971), the Trial Court rejected Tulowitzki's alternative argument that a franchise existed under developing case law.

■ We take a different approach in reaching the same ultimate result in favor of Atlantic. Assuming, *arguendo*, that the relationship here involved is a franchise under the Delaware Franchise Security Law, we hold that under the totality of circumstances in this case, there was no unjust termination or failure to renew the lease without good cause, nor any act of bad faith, in violation of 6 *Del.C.* § 2552. Also, we find no merit in Tulowitzki's assertion of violation of the Retail Sales of Motor Fuel Law.

### III.

■ In order to hold Atlantic's renewal demand "unjust", it must be found to be unfair or unconscionable; that is to say, there must be an absence of meaningful choice and contract terms unreasonably favorable to one of the parties. Superior bargaining power alone without the element of unreasonableness does not permit a finding of unconscionability or unfairness. The traditional test is this: a contract is unconscionable if it is "such as no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other." *Williams v. Walker-Thomas Furniture Co.*, 121 U.S.App.D.C. 315, 320, 350 F.2d 445, 450, 18 A.L.R.3d 1297, 1301–3 (1965). "It is generally held that the unconscionability test in-

volves the question of whether the provision amounts to the taking of an unfair advantage by one party over the other." *J. A. Jones Construction Co. v. City of Dover*, Del.Super., 372 A.2d 540, 552 (1977), appeal dismissed, Del.Supr., 377 A.2d 1 (1977).

■ The business-practices-of-the-community test asks whether the terms are so extreme as to appear unconscionable according to the mores and business practices of the time and place. Applying this test, it was held in *Gordon v. Crown Central Petroleum Corp.*, N.D.Ga., 423 F.Supp. 58, 61–62 (1976), aff'd, 5th Cir., 564 F.2d 413 (1977) that the termination of a gas station dealership by Crown, because the dealer refused to stay open 24 hours per day, was not unconscionable in that such a requirement was "not atypical in the local business community." Applying such normative test, the proffered addendum is not unconscionable; every dealer except Tulowitzki has accepted it.

■ In the instant case, Tulowitzki has not sustained his burden of showing that the tendered addendum bears "no reasonable relation to the business risks involved," nor has he shown that the terms are "so one-sided as to be oppressive". *W. L. May Co., Inc. v. Philco-Ford Corp.*, 273 Or. 701, 708, 543 P.2d 283, 287 (1975). Indeed, on the contrary, Atlantic has demonstrated that in light of the totality of circumstances, the terms of the addendum constitute a reasonable increase in rent based upon an increase in expenditures that Atlantic would be required to make if the Environmental Protection Agency required the installation of vapor recovery equipment at Atlantic's service stations. It is immaterial that the vapor recovery equip-

on behalf of another, products which bear the trademark or trade name of the manufacturer, producer or publisher; or

"(b) Licensing the use of one or more trademarks or trade names to one or more franchised distributors; or

"(c) Distributing or selling to one or more franchised distributors, on its own behalf or on behalf of another, books, magazines, journals, newspapers, and/or other publications published by it or by another.

"(3) 'Franchise' means a contract or other arrangement governing the business relationship within this State between a franchised distributor and a franchisor where the franchised distributor is required to pay more than $100 to enter into such contract or other arrangement.

"(4) 'Products' means any tangible items offered for sale irrespective of their nature, including, without limiting the generality of the term, all types of publications."

ment does not add directly to the dealer's earning power. It is not a condition of a reasonable rental that an item can only be included in rent if it adds directly to the lessee's earnings. And the uncertainty of the government's requirements did not make the addendum unconscionable; the addendum was simply a matter of business foresight. If the vapor recovery equipment were not ultimately required, the additional rental would not ultimately be due.

Tulowitzki also asserts that the $17.54 per month rental figure is unconscionable, because of the open-ended nature of the rental period[5] and the averaging of costs. He contends that the payment of rent for the equipment should end after the cost has been amortized which, he argues, would occur in approximately four years. Tulowitzki makes no record to support these contentions. The life of the equipment is unknown and the equipment might need replacement. The argument is that the cost averaging is unfair in that it could result in Tulowitzki's paying part of the cost of vapor recovery equipment at other stations. Here, too, Tulowitzki has failed to make a record to support his position and *Shell Oil Co. v. Marinello,* 120 N.J.Super. 357, 294 A.2d 253, 264 (1972) aff'd 63 N.J. 402, 307 A.2d 598 (1973), cert. denied 415 U.S. 920, 94 S.Ct. 1421, 39 L.Ed.2d 475 (1974), upon which he relies in this connection, is contrary to his position.

The provision of the Retail Sales of Motor Fuel Law upon which Tulowitzki relies in this connection is also contrary to his position in this connection. That Law states that "[e]very manufacturer, supplying petroleum products to retail dealers or other retail fuel outlets shall apply all equipment rentals uniformly to all dealers and outlets supplied." 6 *Del.C.* § 2906(b).

Tulowitzki has also failed to carry his burden of demonstrating that the $17.54 figure itself is unconscionable. Although gross disparity between price and value can be used to demonstrate unconscionability,

*American Home Improvement Association v. MacIver,* 105 N.H. 435, 201 A.2d 886, 889 (1964), Tulowitzki has failed to provide a factual basis for this argument. Compare *Patterson v. Walker-Thomas Furniture, Inc.,* D.C.App., 277 A.2d 111, 114 (1971), where the court stated:

"An unsupported conclusory allegation . . . that a contract is unenforceable as unconscionable is not enough. Sufficient facts surrounding the 'commercial setting, purpose and effect' of a contract at the time it was made should be alleged so that the court may form a judgment as to the existence of a valid claim of unconscionability . . . ."

\* \* \* \* \* \*

Nor do we think that the indemnity clause in the addendum forms a basis for holding the agreement unconscionable. The clause requires the lessee to hold harmless and defend the lessor from all claims for personal injury or damage to property arising from the lessee's use or custody of the equipment, except claims arising from the lessor's failure to properly maintain the equipment. Contrary to Tulowitzki's contention, this clause does not require the dealer to indemnify and hold Atlantic harmless on *any* claims arising from the use of the equipment. The clause provides only for indemnification by Tulowitzki for damages and injuries arising out of his "use, operation, or custody" of the vapor recovery equipment, and provides a specific exception for "those claims, losses and damages arising from the failure of the lessor to maintain and repair the Equipment."

Finally, Tulowitzki argues that the addendum is unconscionable because of the clause which states:

"It is expressly understood and agreed that no representation[s] have been made or are made by lessor with respect to the equipment's compliance with the regulation."

5. Although the lease itself is for one year, the parties proceeded under the assumption that if the EPA required vapor recovery equipment, a vapor recovery rental addendum would appear in future leases.

Assuming, as we must in the absence of any evidence to the contrary, that Atlantic will employ good faith efforts to obtain equipment complying with government regulations, this clause may not be said to be unconscionable. If our assumption is incorrect, Tulowitzki will have his remedy.

## IV.

In summary, Tulowitzki has failed to carry his burden of demonstrating that "the terms of the agreement bear no reasonable relation to the business risks involved and are so one-sided as to be oppressive." *W. L. May Co. v. Philco-Ford Corp.*, 543 P.2d at 287. Thus, there is no basis for finding that the requirement that plaintiff sign the vapor recovery agreement in order to renew his service station lease operated to terminate his franchise without just cause.

We hold, therefore, that under the totality of circumstances, there is no "unjust termination" or "failure to renew without good cause" in this case.

\*    \*    \*    \*    \*    \*

Affirmed.