**George GRAHAM and Mary Jane Graham, Plaintiffs Below, Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation, Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted: June 27, 1989.
Decided: Oct. 16, 1989.

Harold Schmittinger and William D. Fletcher, Jr. (argued) of Schmittinger and Rodriguez, P.A., Dover, for appellants.

Robert B. Young (argued) and Norman H. Brooks, of Young & Sherlock, Dover, for appellee.

Before CHRISTIE, C.J., and WALSH and HOLLAND, JJ.

WALSH, Justice:

In this appeal, we are called upon to decide whether a mandatory binding arbitration clause in an automobile insurance policy is enforceable over the objection of the insured. The plaintiffs, George and Mary Jane Graham (the "Grahams"), appeal from a decision of the Superior Court granting the defendant-insurer's motion for summary judgment. The Grahams object to the enforcement of the arbitration clause on both statutory and constitutional grounds. Specifically, they contend that because 18 *Del.C.* § 3902 does not explicitly endorse the resolution of uninsured motorist claim disputes through the arbitral mechanism, an insured may not be compelled by contractual language to submit to arbitration. The Grahams further argue that enforcement of the arbitration clause would deprive them of the right to trial by jury preserved in Article I, § 4 of the Dela-

ware Constitution. We find no merit in either contention. Accordingly, we hold that the arbitration clause is enforceable and affirm the judgment of the Superior Court.

## I

The factual circumstances giving rise to this appeal are quite straightforward. On or about August 4, 1985, the Grahams were travelling in a motor vehicle insured by State Farm Mutual Automobile Insurance Company ("State Farm"). The vehicle was forced off the roadway by a negligent motorist whose identity has never been ascertained. The Grahams' vehicle struck a telephone pole and the couple sustained physical injuries.

A dispute arose between the parties concerning the amount that State Farm was obligated to pay under the uninsured motorist provisions of its policy with the Grahams. The Grahams filed suit in the Superior Court, seeking a determination of State Farm's responsibility for coverage. State Farm filed a motion for summary judgment, asserting that the Grahams' suit was barred by language in the policy that purported to mandate that claims such as the Grahams' be resolved through binding arbitration.[1] The parties have agreed that the Grahams were not explicitly advised of the inclusion of this language in the policy and were never given the option of selecting a different dispute resolution mechanism. Moreover, the Grahams did not receive a copy of the policy until after they had paid their first premium. However, the Superior Court found that the Grahams ratified the policy by failing to object to any of its provisions after receiving it. Even if the Grahams could have avoided the arbitration provisions of the policy shortly after its execution, the court found that they lost that right by their silent acceptance of the policy's coverage during the two years prior to their accident. Accordingly, the court granted State Farm's motion for summary judgment and held that the parties' dispute should be resolved in an arbitration proceeding.

## II

In arguing against enforcement of the arbitration clause, the Grahams attempt to appeal to "the old judicial hostility to arbitration." *Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 2d Cir., 126 F.2d 978, 985 (1942). At common law, courts readily declared agreements to arbitrate contrary to public policy, since such agreements were viewed as an attempt to deprive the court of its jurisdiction. *See, e.g., Home Ins. Co. of N.Y. v. Morse*, 87 U.S. (20 Wall.) 445, 451, 22 L.Ed. 365 (1874); *Randel v. Chesapeake & Del. Canal Co.*, Del. Super., 1 Del. (1 Harr.) 233 (1833). Over time, however, the judicial view of arbitration has evolved from hostility to eager acceptance. In part, this change has been fostered by a recognition of the efficiency and specialized expertise available in an arbitral forum. In addition, many jurisdictions have enacted legislation mandating the enforcement of agreements to submit to arbitration. In 1947, Congress led the way with the United States Arbitration

---

1. The facial meaning of the policy language is clear. The policy states:

> Two questions must be decided by agreement between the insured and us:
>     1. Is the insured legally entitled to collect damages from the owner or driver of the uninsured motor vehicle; and
>     2. If so, in what amount?
> If there is no agreement, these questions shall be decided by arbitration upon written request of the insured or us. Each party shall select a competent and impartial arbitrator. These two shall select a third one. If unable to agree on the third one within 30 days either

party may request a judge of a court of record in the county in which the arbitration is pending to select a third one. The written decision of any two arbitrators shall be binding on each party.
> The cost of the arbitrator and any expert witness shall be paid by the party who hired them. The cost of the third arbitrator and other expenses of arbitration shall be shared equally by both parties.
> The arbitration shall take place in the county in which the insured resides unless the parties agree to another place. State court rules gov-

Act, 9 U.S.C. §§ 1–15.[2] Subsequently, many states (including Delaware) enacted a Uniform Arbitration Act (the "Act") similar to the federal legislation. 10 Del.C. §§ 5701–5725.

■ The Delaware version of the Act provides that "[a] written agreement to submit to arbitration any controversy existing at or arising after the effective date of the agreement is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract...." 10 Del.C. § 5701. In short, the public policy of this state favors the resolution of disputes through arbitration. *Pettinaro Constr. Co. v. Harry C. Partridge, Jr., & Sons, Inc.*, Del.Ch., 408 A.2d 957, 961 (1979). On its face, section 5701 applies to an agreement to arbitrate contained in an insurance policy. Therefore, to avoid enforcement of the arbitration clause, the Grahams must show either that the clear language of section 5701 has been superceded by some other provision of law or that the clause may be revoked under traditional principles of contract law.

■ First, the Grahams argue that because the statute governing uninsured motorist coverage, 18 Del.C. § 3902, does not explicitly endorse the inclusion of arbitration clauses in policies issued under the statute, any attempt to compel arbitration is contrary to the public policy embodied in section 3902. The Grahams seek to rely upon our recent decision in *Frank v. Horizon Assurance Co.*, Del.Supr., 553 A.2d 1199 (1989). In *Frank*, we held that an insurer may not limit uninsured motorist coverage by restricting its scope to certain vehicles owned by the insured. Rather, section 3902 mandates that coverage be deemed personal to the insured, regardless of the vehicle he occupies. Thus, *Frank* stands for the proposition that an insurer may not contract the scope of coverage below the level established by statute. In this case, however, the insurer has not attempted to limit coverage in any way. State Farm has simply specified the means by which policy disputes are to be resolved.[3] The Grahams suggest that an arbitration of their dispute with State Farm would produce a biased result and thus limit their rights under the policy. They assert that arbitration would be "extremely harsh" because State Farm may select one of the arbitrators and because two out of the three arbitrators may impose a binding decision. Far from being unfair, the arbitral mechanism contained in the policy is quite common in the commercial arena and shows no favoritism to either party. Moreover, 10 Del.C. § 5714 provides a judicial remedy when an arbitration has been tainted by "corruption, fraud or other undue means," by "evident partiality," or by other specified forms of misconduct. We believe that this statutory safeguard is sufficient to insure that an arbitration under the policy will be fair to both parties.

■ The Grahams also argue that enforcement of the arbitration clause would deprive them of their constitutional right to a jury trial. Del.Const., art. I, § 4. The Delaware Constitution preserves the right to trial by jury as it existed at common law. *Fountain v. State*, Del.Supr., 275 A.2d 251 (1971); *In re Markel*, Del.Supr., 254 A.2d 236 (1969). Moreover, we have held in *Allstate Ins. Co. v. Spinelli*, Del.Supr., 443

erning procedure and admission of evidence shall be used.

2. In recent years, the U.S. Supreme Court has interpreted the federal legislation broadly, to allow the enforcement of arbitration clauses similar to the one in the parties' insurance policy. *See, e.g., Rodriguez de Quijas v. Shearson/American Express, Inc.*, — U.S. —, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (arbitration of dispute between securities broker and customer).

3. The Grahams point out that the legislature explicitly endorsed the use of the arbitral mechanism for resolving disputes arising under the State's No–Fault Statute, 21 Del.C. § 2118. They argue that the legislature's failure to include a similar provision in the uninsured motorist statute demonstrates a hostility to arbitration of disputes involving uninsured coverage. On the contrary, we believe that the arbitration provisions of section 2118 were intended to create a specialized arbitration mechanism. Since the legislature has not created a similar mechanism for the uninsured motorist statute, providers of that form of insurance are free to invoke the policies and procedures of the Uniform Arbitration Act.

A.2d 1286, 1290 (1982) that an action arising under an uninsured motorist policy is an action *ex contractu,* an action known to the common law. If the parties' dispute were to be tried in the courts of this State, the parties would be entitled to request a jury trial. The availability of a jury trial for dispute resolution is not determinative, however. That right is not absolute but subject to waiver if the parties so intend. Accordingly, we must decide whether the arbitration clause constitutes a valid waiver of the right to a jury trial. We believe that it does.

The Grahams argue that they should not be bound by contract terms to which they did not explicitly assent. They contend that because an insurance policy is a contract of adhesion, it cannot serve as the vehicle for a fully informed waiver. State Farm concedes that the Grahams were never informed of the arbitration clause and received a copy of the policy only after premiums had been paid and coverage had begun. Therefore, it is argued that the arbitration clause may not be enforced against the wishes of the insured.

The problem with the Grahams' argument is that it proves too much. It is true that an insurance policy is a contract of adhesion. *State Farm Mut. Auto. Ins. Co. v. Arms,* Del.Supr., 477 A.2d 1060, 1065 (1984). However, the adhesive nature of a contract does not allow the non-drafting party to reject contract terms that he later finds unappealing. If the Grahams' argument were followed to its logical extreme, an insured could radically redefine his policy simply by proving that he had not been informed of its stated terms in advance of purchase.[4]

The fact that a contract is adhesive does not give rise to a presumption of unenforceability. The adhesion factor is an aid in contract interpretation. If there is an ambiguity in the terms of the contract, that ambiguity will be resolved against the party who drafted the contract. *See E.I. du Pont de Nemours & Co. v. Shell Oil Co.,* Del.Supr., 498 A.2d 1108, 1114 (1985). The Grahams have not argued that the arbitration clause is ambiguous, however, and thus we have no occasion to apply this rule of construction.

A contract of adhesion may be declared unenforceable, in whole or in part, if its terms are unconscionable within the meaning of 6 *Del.C.* § 2–302. Nevertheless, mere disparity between the bargaining power of parties to a contract will not support a finding of unconscionability. *Tulowitzki v. Atlantic Richfield Co.,* Del. Supr., 396 A.2d 956, 960 (1978). A court must find that the party with superior bargaining power used it to take unfair advantage of his weaker counterpart. For a contract clause to be unconscionable, its terms must be " 'so one-sided as to be oppressive.' " *Id.* (quoting *W. L. May Co. v. Philco–Ford Corp.,* 273 Or. 701, 708, 543 P.2d 283, 287 (1975)). Thus, while it is true that the insurance policy was presented to the Grahams on a "take-it-or-leave-it" basis, we do not believe that the inclusion of an arbitration clause unfairly favored State Farm. If the arbitration mechanism established by the policy had been unfairly structured, a finding of unconscionability might be appropriate. *See, e.g., Nationwide Mut. Ins. Co. v. Marsh,* 15 Ohio St.3d 107, 472 N.E.2d 1061, 1063 (1984) (Sweeney, J., concurring). However, since both parties have equal input into the selection of the arbitrators and since both parties

---

**4.** State Farm has cited several cases from other jurisdictions, as well as a Superior Court case, in which clauses mandating the arbitration of automobile insurance policy disputes have been enforced. *See, e.g., Nelson v. Allstate Ins. Co.,* Del.Super., 298 A.2d 337 (1972); *Wales v. State Farm Mut. Auto. Ins. Co.,* Colo.App., 559 P.2d 255 (1976); *Jeanes v. Arrow Ins. Co.,* Ariz.App., 494 P.2d 1334 (1972). The Grahams attempt to distinguish these cases by pointing out that in each one, the court referred to the *voluntary* nature of the agreement between the parties.

We suspect, however, that the policies involved in those cases differed little from the one in dispute here. We think it naive to assume that insurance agents in the cited cases sat down and bargained with their customers or provided exhaustive explanations of policy language. Rather, we believe that when the courts in those cases spoke of "voluntary agreements," they meant that no one had forced the insureds to enter a contract with any given insurance company. Thus, we view the cited cases as persuasive authority.

are bound by the result, we find no inherent unfairness in the clause. Indeed, it would be highly inappropriate if this Court were to find a contract unconscionable because it adheres to the declared public policy of this State.

Finally, the Grahams argue that although their policy was presented·on a "take-it-or-leave-it" basis, they were never given a meaningful opportunity to "leave it." They contend that because they were not given a copy of the policy until after coverage had begun, they had no chance to object to the arbitration clause or even to seek coverage with another insurer. It is doubtless true that any attempt to remove the arbitration clause after coverage had begun would have been futile. An attempt to bargain over inclusion of the clause before coverage began would have been equally unavailing. However, if the Grahams had read their policy after receiving it, they would have discovered the arbitration clause. If they then believed this clause to be sufficiently objectionable, they could have cancelled the policy and sought coverage with another insurer on more agreeable terms.[5] Nevertheless, the Grahams continued to accept coverage and pay premiums for two years before their accident occurred. A party to a contract cannot silently accept its benefits and then object to its perceived disadvantages, nor can a party's failure to read a contract justify its avoidance. *See Eastern States Petroleum Co. v. Universal Oil Prods. Co.*, Del.Ch., 49 A.2d 612 (1946); *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563 (1983). Because the arbitration clause is part of a valid, enforceable contract and is not unconscionable, we believe that it constitutes an effective waiver of the parties' right to a jury trial.

### III

The public policy of Delaware favors the resolution of disputes through arbitration. The uninsured motorist statute, 18 *Del.C.*

§ 3902, by its mere silence, cannot be viewed as inconsistent with this policy. Although an agreement to arbitrate will often require a waiver of the parties' right to a jury trial, we find that the arbitration clause contained in the parties' policy effectuated such a waiver. The judgment of the Superior Court is AFFIRMED.

---

5. We note that the policy contains a clause allowing the insured to cancel coverage at any time. Moreover, if a significant number of consumers truly value insurance policies without arbitration clauses, there is no reason to believe that competition would not lead certain insurers to offer such policies.