**Ann Marie CABAN, Plaintiff**

v.

**J.P. MORGAN CHASE & CO., Defendant.**

**Case No. 08–60910–CIV.**

United States District Court, S.D. Florida, Fort Lauderdale Division.

March 23, 2009.

■

Roman Groysman, Esq., Ginnis & Groysman, P.A., Fort Lauderdale, FL, J. Andrew Meyer, Esq., James Hoyer Newcomer & Smilijanich, Tampa, FL, Tod N. Aronovitz, Esq., Miami, FL, for Plaintiff.

Henry E. Mendia, Esq., Stroock Stroock & Lavan, Miami, FL, for Defendant.

### ORDER GRANTING IN PART AND DENYING IN PART J.P. MORGAN CHASE'S MOTION TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS & CLOSING CASE

ADALBERTO JORDAN, District Judge.

In this purported class-action lawsuit, Ms. Caban seeks to represent a class of credit card holders who were allegedly charged improperly inflated interest rates by J.P. Morgan Chase ("Chase").[1] Now pending is Chase's motion [D.E. 10] to compel Ms. Caban to arbitrate her claim on an individual—as opposed to class-wide—basis pursuant to the terms of the cardmember agreement. As explained below, although I find the class action waiver

---

1. J.P. Morgan Chase asserts that it is improperly named as a defendant in this case, given that Ms. Caban's credit card was issued by Chase Bank USA, yet it does so without formally moving to dismiss itself as a defendant.

Because J.P. Morgan Chase opted to defend this lawsuit on substantive grounds, I will rule on its motion to compel arbitration without addressing the merits of this assertion.

to be unenforceable, I find that the arbitration agreement is otherwise valid, and I therefore compel Ms. Caban to arbitration on a classwide basis.

## I. BACKGROUND

According to the amended complaint, Chase charged its customers a daily interest rate that was 1/365 of its stated annual interest rate in both 2004 and 2008. Owing to the extra day in these quadrennial leap years, this resulted in an actual interest rate that was 366/365ths of the stated rate, resulting in an overcharge to Ms. Caban of 4 cents per month based on her average daily balance of $632.57. The complaint asserts that, "[w]hile at first blush the overcharges to the individual consumers may appear minimal, . . . this patently unfair billing practice yielded a windfall of millions of dollars for CHASE at the consumers' expense." *See* Amended Complaint, at ¶ 10 [D.E. 5]. Ms. Caban filed this lawsuit to obtain recompense for four classes of Chase cardholders: (1) 2004 Florida cardholders; (2) 2008 Florida cardholders; (3) 2004 national cardholders; and (4) 2008 national cardholders.

Like all Chase credit cards, the Chase Platinum MasterCard account that Ms. Caban opened in April 2003 was governed by a cardmember agreement that contained a provision requiring arbitration of all claims relating to the contract. In October of 2004, Chase mailed to Ms. Caban a unilateral modification of the terms of the cardmember agreement that became effective December 1, 2004, unless she notified Chase of her objection to the changes. She declined to exercise this option. Like the original agreement, the modified cardmember agreement contains an arbitration provision, which—in addition to requiring arbitration—also demands that Ms. Caban waive her right to

bring or "be part of any class action or other representative action brought by anyone else."

After Ms. Caban filed this lawsuit, Chase moved to compel her to arbitrate her claims on an individual basis and forego this class action. In her opposition to this motion, Ms. Caban asserts that the arbitration provision and class action waiver are unenforceable, due to the unconscionability of the contract terms.

## II. ANALYSIS

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 2, a contractual term evidencing the parties' intent "to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Accordingly, whereas federal law establishes the enforceability of arbitration agreements, courts must apply state contract law to determine whether a valid agreement to arbitrate was formed, and common-law defenses to contract formation such as unconscionability may invalidate the agreement. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367–68 (11th Cir.2005). A party opposing an arbitration agreement bears the burden of demonstrating its invalidity. *See Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).

Ms. Caban asserts that the mandatory arbitration provision is invalidated by both Florida and Delaware state law, because the class action waiver is unconscionable and because the arbitration agreement bars the assertion of claims under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201–213. Al-

though I agree that the class action waiver is invalid, I find that this merely requires it to be severed from the contract, and in the absence of the unconscionable term, the remainder of the arbitration agreement is valid and enforceable.

## A. CHOICE-OF-LAW

■ "When it exercises jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, a federal court must apply the choice of law rules of the forum state to determine which substantive law governs the action." *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, 1033 (11th Cir.2008) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Chase's cardmember agreement dictates that, where state law is applicable, Delaware law will govern. Although contractual choice-of-law provisions are presumptively valid under Florida law, this presumption recedes when the law of the chosen forum effects a result in contravention of a strong public policy of the State. *See Burroughs Corp. v. Suntogs of Miami, Inc.*, 472 So.2d 1166, 1168 (Fla. 1985).[2] The mere fact that Florida law would effect a different result does not render a choice-of-law clause invalid; rather, the law of the alternative forum must conflict with a Florida policy interest

of "paramount" importance. *See Roach*, 945 So.2d at 1165 ("[A] court may not depart from the rules of comity, except in certain cases, for the purpose of protection of Florida citizens or for the purpose of enforcing some paramount rule of public policy.").

■ The choice-of-law analysis is complicated in this case by the fact that neither the Florida Supreme Court nor the Delaware Supreme Court has expressly addressed whether a mandatory arbitration clause containing a class action waiver is unconscionable, and the issue is therefore unsettled in both jurisdictions. As explained below, I conclude that Delaware law upholds the arbitration agreement, but invalidates and severs the class action waiver. Given that neither result contravenes a paramount policy interest of the state of Florida, *see, e.g., Global Travel Marketing, Inc. v. Shea*, 908 So.2d 392, 403 (Fla.2005) (holding that a contractual provision that does not extinguish a plaintiff's claim, but merely shifts the forum from a court to arbitration, does not violate the fundamental right of access to the courts under the Florida Constitution), the contractual stipulation to Delaware law is enforceable under Florida's choice-of-law analysis.[3] I must therefore decide the issue solely under Delaware law and refrain

2. In *Burroughs*, the Florida Supreme Court reversed an intermediate appellate court's invalidation of a contractual choice-of-law provision, noting that although the law of the chosen forum conflicted with Florida's statute of limitations governing usury claims, the Florida statutes at issue did not advance a "strong public policy" sufficient to render void the contracts' dickered terms. *See Burroughs*, 472 So.2d at 1167–68. *Cf. State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So.2d 1160, 1164–65 (Fla.2006) (noting that the public policy exception applies to the *lex loci contractus* rule, but only if the party attempting

to invoke the exception is permanently domiciled in Florida).

3. Although *Shea* found that the arbitration clause did not contravene Florida public policy the Florida Supreme Court noted in dicta that a clause releasing a party from liability for future tortious conduct would likely produce a different result. Thus, a class action waiver that effectively releases a corporation from liability to future small-sum common-law claims would potentially violate the fundamental right of access to the courts guaranteed by the Florida Constitution. *See* FLA.

from speculating on issues not yet decided by the Florida Supreme Court. *See Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1234–35 (11th Cir.1995) ("[T]he more prudent course is for the court to undertake a traditional conflict-of-laws analysis, determine the controlling law, and then attempt to answer the relevant legal question under the law of that state. This approach reduces the likelihood that an error of state law will infect the proceeding, since the court will only be required to interpret the unsettled law of one jurisdiction.").

## B. THE CLASS ACTION WAIVER IS UNCONSCIONABLE

 The validity of the class action waiver is a question for the court, and not for the arbitrator. *See, e.g., Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 877 (11th Cir.2005). *Accord Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002); *Kristian v. Comcast Corp.*, 446 F.3d 25, 55 (1st Cir.2006); *In re Am. Express Merchants' Litig.*, 554 F.3d 300, 311 (2d Cir.2009).

 Under Delaware law, "the unconscionability test involves the question of whether the provision amounts to the taking of an unfair advantage by one party over the other." *See Tulowitzki v. Atl.*

*Richfield Co.*, 396 A.2d 956, 960 (Del.1978). "[M]ere disparity between the bargaining power of parties to a contract will not support a finding of unconscionability.... A court must find that the party with superior bargaining power used it to take advantage of his weaker counterpart. For a contract clause to be unconscionable, its terms must be so one-sided as to be oppressive." *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 912 (Del. 1989). Thus, to invalidate a contractual provision under Delaware law, a court must find substantial inequity in the terms of the challenged clause.[4]

 Both parties acknowledge that the Delaware Supreme Court has not addressed the unconscionability of class action waivers. To support its argument that the class action waiver is enforceable under Delaware law, Chase relies on *Edelist v. MBNA Am. Bank*, 790 A.2d 1249 (Del.Super.Ct.2001). In *Edelist*, the Delaware trial court collected various cases upholding arbitration provisions with mandatory class action waivers, and found that the provision in question "was clearly articulated in the arbitration amendment." Relying on these cases, the court rejected Mr. Edelist's challenge to the class action waiver: "The Court finds nothing unconscionable about it and finds the bar on class actions enforceable." *See id.* at 1260–61.

CONST. art. I, § 21. Accordingly, to the extent that I am wrong in concluding that Delaware law invalidates the class action waiver at issue, the parties choice of Delaware law could not be given effect, and Florida law would control the enforceability of the clause. *See Burroughs*, 472 So.2d at 1167–68.

4. Although its courts have made no such delineation, it appears that Delaware's unconscionability analysis emphasizes substantive, as opposed to procedural, inequality. *Compare Graham*, 565 A.2d at 912, *and Tulowitzki*,

396 A.2d at 960, *with Fonte v. AT & T Wireless Servs.*, 903 So.2d 1019, 1025 (Fla. 4th DCA 2005) ("There are two types of unconscionability, procedural and substantive. Procedural unconscionability concerns the manner in which the contract is entered, whereas substantive unconscionability looks to whether the contractual terms are unreasonable and unfair. To decline to enforce a contract as unconscionable, the contract **must be both** procedurally unconscionable and substantively unconscionable.") (emphasis in original) (citations omitted).

When a federal court applies substantive state law, it is "bound to decide the case the way it appears the state's highest court would." *See Risley v. Nissan Motor Corp. USA,* 254 F.3d 1296, 1299 (11th Cir.2001). Where the highest court in a state is silent on a particular issue, a federal court may look to other courts in the state for guidance. *See Chepstow Ltd. v. Hunt,* 381 F.3d 1077, 1080 (11th Cir. 2004). Although a decision by an inferior state courts is usually considered "trustworthy data" of substantive state law, it is not binding on a federal court, particularly where it appears to have misapplied state law. *See, e.g., Fortini v. Murphy,* 257 F.3d 39, 48–49 (1st Cir.2001)(rejecting the analysis of an intermediate state appellate court). Indeed, in *King v. Order of United Commercial Travelers,* 333 U.S. 153, 161–62, 68 S.Ct. 488, 92 L.Ed. 608 (1948), the Supreme Court held that a federal court did not err by declining to follow a decision of a South Carolina trial court in its application of South Carolina law. With this principle in mind, I find *Edelist* unpersuasive to the extent that it finds no unconscionability in a class action waiver that has the effect of immunizing the credit card company against a wide range of its customers' claims.

First, although *Edelist* cited four cases that upheld class-arbitration waiver provisions under either federal or Delaware law, none of these cases expressly addressed whether the class action waiver was unconscionable. *See Lloyd v. MBNA Am. Bank, NA.,* No. 00–109–CIV–SLR, 2001 WL 194300, at *4 (D.Del. Feb. 22, 2001) (holding that an arbitration agreement was not unconscionable, despite the fact that it was a contract of adhesion); *Sagal v. First USA Bank, N.A.,* 69 F.Supp.2d 627, 631–32 (D.Del.1999) (holding that class action waiver was not invali-

dated by class action provisions in the Truth in Lending Act, 15 U.S.C. § 1640, because TILA did not "amount[ ] to a 'congressional command' to preserve class action suits at the expense of [arbitration]"); *Marsh v. First USA Bank, N.A.,* 103 F.Supp.2d 909, 920 (N.D.Tex.2000) (finding no unconscionability under Delaware law in a mandatory arbitration agreement without addressing the unconscionability of the class action waiver); *Randolph v. Green Tree Financial Corp.–Ala.,* 244 F.3d 814, 818–19 (11th Cir.2001) (upholding a class action waiver on the ground that TILA did not create a non-waivable right to pursue claims against a lender on a classwide basis). Thus, the purported class representatives in the cases cited by *Edelist* challenged the class action waivers on two bases: (1) that the arbitration clauses were procedurally unconscionable under Delaware law (*Lloyd & Marsh*); and (2) that Congress created a non-waivable right to pursue claims brought under TILA on a classwide basis (*Sagal & Randolph*). In rejecting these arguments, no court expressly applied Delaware unconscionability law to the class action waiver. Consequently, the *Edelist* court's reliance on these cases for the proposition that there was no unconscionability in the class action waiver provision of the MBNA arbitration agreement is misplaced.

Second, and more importantly, *Edelist* upheld the waiver solely on the ground that it "was clearly articulated in the arbitration amendment," without probing whether the agreement imposed inequitable terms under Delaware unconscionability principles. Yet the clarity of a contractual term is of marginal relevance to its fairness, and certainly not a dispositive factor under the state's unconscionability analysis. *See Fritz v. Nationwide*

*Mut. Ins. Co.,* No. 1369–Civ, 1990 WL 186448, at *4–*5 (Del.Ch. Nov. 26, 1990) (noting that the comprehensibility of a clause to a lay person is one of 10 non-dispositive factors relevant to the unconscionability inquiry). Indeed, Delaware law emphasizes *substantive* inequity in determining the validity of contractual terms. *See Graham,* 565 A.2d at 911–12; *Tulowitzki,* 396 A.2d at 960. In *Graham,* for example, the Delaware Supreme Court upheld an arbitration agreement in an insurance contract based on what amounted to a procedural challenge to the clause. Discounting the fact that the clause at issue was an adhesion contract that the plaintiffs never read, the Court enforced the agreement because there was nothing about it that was inherently unfair, but noted that "[i]f the arbitration mechanism established by the policy had been unfairly structured, a finding of unconscionability might be appropriate." *See Graham,* 565 A.2d at 912 (citing *Nationwide Mut. Ins. Co. v. Marsh,* 15 Ohio St.3d 107, 472 N.E.2d 1061, 1063 (1984) (Sweeney, J., concurring)).[5] In this case, it is undisputed that the class action waiver at issue is a "take-it-or-leave-it" adhesion contract that Ms. Caban never actually signed. As ex-plained below, because the provision is inherently inequitable and amounts to Chase taking advantage of its customers, the clause is unenforceable under Delaware law.

Ms. Caban readily acknowledges that her actual damages in this case are less than $1. Whereas a class action would allow her to spread the costs of prosecuting her claim across the entire class, it would hardly be worth her time and money to pursue such a meager claim on an individual basis, whether through arbitration or in small-claims court, as permitted by the contract. If the class action waiver were to be upheld, the only rational response from Ms. Caban would be to let Chase's alleged misconduct slide.

The very purpose of the class action mechanism is to allow small recoveries that would otherwise be precluded due to the complexity and cost of litigation. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 616–17, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (noting that, although the federal class action rules are not designed to "exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind the

---

5. In *Marsh,* the Supreme Court of Ohio found that an arbitration agreement in an insurance contract was inapplicable to the plaintiff's claim due to procedural reasons. *See Marsh,* 472 N.E.2d at 1062. Concurring in judgment, Justice Sweeney found that the arbitration agreement at issue was unconscionable and against the public policy of Ohio, because it created arbitration awards that were non-binding only in the event they exceeded $25,000. *See id.* at 1063. This effectively afforded the insurance company the right to re-try adverse arbitration awards without bestowing the same right to the insured. ("[B]oth parties are bound only by low awards, which are likely to be in Nationwide's favor. High awards can be avoided by either the insured or Nationwide, but it is unlikely that an insured would ever seek to avoid a high award, even if he was unsatisfied with it, because by avoiding the award and seeking a trial the insured would incur additional legal expense while also placing at risk the entire award that he already has received."). Although clearly dicta, the allusion in *Graham* to the arbitration agreement in *Marsh* as an example of a clause that might be against the Delaware public policy is instructive here. Whereas the clause in *Marsh* merely provided a procedural advantage to the insurance company with respect to the post-arbitration appellate process, the class action waiver here confers a substantive advantage on Chase by effectively immunizing it against nearly all small claims.

vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.' ... 'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.' ") (citations omitted); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 161, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("A critical fact in this litigation is that petitioner's individual stake in the damages award he seeks is only $70. No competent attorney would undertake this complex antitrust action to recover so inconsequential an amount. Economic reality dictates that petitioner's suit proceed as a class action or not at all."); *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 338, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) (commenting that the class action facilitates the "vindicat[ion of] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost."); *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir.2004) ("[T]he *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.00."). As these courts have recognized, the unavailability of the right of consumers to participate in a class action allows a large corporation to obtain virtual blanket immunity from small claims.

Given the importance of the class action in vindicating small claims such as those brought by Ms. Caban, I find that Delaware law does not countenance the waiver contemplated in the Chase cardmember agreement. Because the clause applies irrespective of the amount of the potential claim, the provision implicitly allows Chase

to engage in wrongful conduct that will go unchecked, so long as it is able to minimize the damages borne by each individual cardmember. This is a provision that "no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other." *See Tulowitzki,* 396 A.2d at 960.

In support of its assertion that Delaware public policy favors class action waivers, Chase also relies on an amicus brief filed in support of Discover Bank's appeal to the Supreme Court of California in *Discover Bank v. Superior Court,* 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005). Arguing a class action waiver should be upheld, the Delaware Bank Commissioner asserted as follows:

> In Delaware, "no-class action" clauses in arbitration agreements are not unconscionable or against public policy. On the contrary, such clauses are consistent with the fundamental principle that arbitration is 'cheaper and faster than litigation' and has 'simpler procedural and evidentiary rules.' Moreover, they promote safe and sound banking operations by helping keep costs down, thereby facilitating the provision of affordable credit nationwide.

Brief for Robert A. Glen, Delaware State Bank Commissioner, as Amicus Curiae Supporting Petitioner, *Discover Bank v. Superior Court,* 36 Cal.4th 148, 30 Cal. Rptr.3d 76, 113 P.3d 1100 (Cal.2005) (No. S113725), 2003 CA S.Ct. Briefs 113725, at *20 (citation omitted).

I reject this argument for two reasons. First, the position of the state's Bank Commissioner, filed in an adversarial proceeding pitting a Delaware corporation against a class of California plaintiffs, is not necessarily an accurate indication of

Delaware state law as applied by its Supreme Court. Second, the Commissioner's position is curious as applied to provisions that require small claims to be brought on an individual basis. Under the terms of Chase's contract, the bank is required to cover the filing fee and the costs of any hearing in arbitration, plus its own attorneys' fees. If even a tiny fraction of the 67,000,000 cardholders who Ms. Caban seeks to represent were to pursue a similar claim on an individual basis, the costs to Chase would be astronomical. In contrast, a single class action seeking the same relief on behalf of the entire class would prove less costly for all involved, as it "would achieve economies of time, effort, and expense." *See Amchem Prods.*, 521 U.S. at 615, 117 S.Ct. 2231. Thus, the clause may serve to keep Chase's costs down, but only because it precludes the company from having to defend against allegations of wrongful conduct.[6] In the absence of controlling precedent from its Supreme Court, I find that Delaware law does not countenance such an inherently inequitable provision.

Although the Delaware Supreme Court has never reached the issue, a number of federal courts and state supreme courts have invalidated similar class action waivers that effectively precluded consumers from asserting small-sum claims. *See Dale v. Comcast Corp.*, 498 F.3d 1216, 1224 (11th Cir.2007) (finding waiver unconscionable under Georgia state law); *Kristian v. Comcast Corp.*, 446 F.3d 25, 55 (1st Cir. 2006) ("If the class mechanism prohibition here is enforced, Comcast will be essentially shielded from private consumer antitrust enforcement liability, even in cases

where it has violated the law."); *Skirchak v. Dynamics Research Corp.*, 508 F.3d 49, 59 (1st Cir.2007) (holding class action waiver unconscionable under Massachusetts law); *In re Am. Express Merchants' Litig.*, 554 F.3d 300, 320 (2nd Cir.2009) (invalidating class action waiver "because to do so would grant Amex de facto immunity from antitrust liability."); *Homa v. Am. Express Co.*, 558 F.3d 225, 232–33 (3d Cir. 2009) (finding class action waiver invalid under New Jersey state law); *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 984 (9th Cir.2007) (holding class action waiver in mobile phone contract unconscionable under California law); *Lowden v. T–Mobile USA, Inc.*, 512 F.3d 1213, 1219 (9th Cir.2008) (holding class action waiver unconscionable under Washington state law); *Discover Bank*, 30 Cal.Rptr.3d 76, 113 P.3d at 1110 ("[W]hen the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then . . . . [it is] unconscionable under California law and should not be enforced."); *Muhammad v. County Bank of Rehoboth Beach, Del.*, 189 N.J. 1, 912 A.2d 88 (2006) ("The public interest at stake in [plaintiff's] ability and the ability of her fellow consumers effectively to pursue their statutory rights under this State's consumer protection laws overrides the defendants' right to seek enforcement of the class-arbitration bar in their agreement.").

The Eleventh Circuit has examined the validity of class action waiver under Geor-

---

**6.** Or, as Ms. Caban alleges, the waiver helps keep profits up by serving as a license for Chase to defraud its customers.

gia unconscionability law twice in recent years. *See Jenkins,* 400 F.3d at 877–78; *Dale,* 498 F.3d at 1219–24. In *Jenkins,* the Eleventh Circuit upheld a class action waiver, concluding that the availability of attorney's fees under the Georgia RICO statute would ensure the availability of lawyers to prosecute actions on an individual basis. Two years later, the Eleventh Circuit invalidated a class action waiver where applicable Georgia law did not guarantee the recovery of attorney's fees to a prevailing plaintiff and the minimal potential recovery effectively deterred any consumer from pursuing the matter individually. *See Dale,* 498 F.3d at 1219–24.[7] In tempering *Jenkins, Dale* encouraged courts to take an *ad hoc* approach in determining the validity of class action waivers:

> Relevant circumstances may include, but are not limited to, the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorneys' fees and other costs and thus obtain legal representation to prosecute the underlying claim, the practical affect the waiver will have on a company's ability to engage in unchecked market behavior, and related public policy concerns.

*Dale,* 498 F.3d at 1224.

Looking at the "totality of the facts and circumstances," I find that the class action waiver at issue here goes too far in immunizing Chase to small-sum claims. First, Ms. Caban's potential recovery is too small to justify the costs of litigation. Although Chase makes much of the fact that the agreement requires it to cover up to $500 in arbitration filing costs, the agreement also requires each party to pay its own attorney's fees and other expenses not expressly covered by Chase under the contract. Second, the agreement only allows the recovery of attorneys' fees to a prevailing party if an applicable statutory claim so provides. Although the FDUTPA claims in the amended complaint would allow for the recovery of fees, these claims fail as a matter of law because the statute does not apply to federally regulated banks such as Chase. *See, e.g., Int'l Brokerage & Surplus Lines, Inc. v. Liberty Mut. Ins. Cos.,* No. 06–104–CIV, 2007 WL 220172, at *9 (M.D.Fla. Jan. 26, 2007). Ms. Caban has therefore failed to plead a viable basis on which to recover mandatory attorney's fees if she were to prevail in this action. *Jenkins,* to the extent it is persuasive, is distinguishable on its facts. And just as no rational consumer would expend a substantial amount of time and money to recover-at most-$1, no attorney (regardless of competence) would ever take such a case on a contingent fee basis.[8] As a result, *Dale* is the most analogous Eleventh Circuit case. In light of the

---

7. *Jenkins* did not mention the amount of the plaintiff's potential recovery, while *Dale* estimated that each plaintiff suffered actual damages somewhere in the ballpark of $10.

8. Chase also inveighs against Ms. Caban's apparent failure to bring a claim under TILA, which could afford her the opportunity to collect modest statutory penalties, plus attorney's fees and costs, albeit on an individual basis. *See Randolph,* 244 F.3d at 818–19 (enforcing class action waiver where plaintiff brought claims under TILA). Ignoring the irony in Chase's attempt to bolster Ms. Caban's case, the fact remains that the amended complaint asserts only state-law causes of action. It would severely undermine the adversary system if a defendant were permitted to obtain the relief it sought by raising claims that its party opponent strategically declined to assert. A plaintiff is generally the master of her complaint, and in order to avoid construing this assertion as an admission by Chase as to its liability under TILA, I reject this argument in its entirety.

powerful impediment the class action waiver imposes on a prospective small-sum claimant, public policy concerns compel its invalidation.

I therefore find that class action waiver is unenforceable under Delaware law, and deny Chase's motion to compel Ms. Caban to assert her claims on an individual basis.

## C. THE SEVERABILITY CLAUSE SAVES THE REMAINDER OF THE ARBITRATION AGREEMENT

■■■ The arbitration agreement at issue contains a severability clause, which in relevant part provides: "If any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force." Neither side disputes the validity of this section of the agreement, and Delaware law—which controls the interpretation of the agreement as explained above—favors the severance of invalid contractual provisions even in the absence of a clause expressly excising the unenforceable term. *See* DEL.CODE tit. 6, § 2–302(1) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may ... enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."). Because the arbitration clause is otherwise reasonable when the class action waiver is severed, I find that the agreement requires Ms. Caban to pursue her claims in arbitration. *See Kristian*, 446 F.3d at 48 (compelling arbitration notwithstanding the agreement's unconscionable class action waiver based on a savings clause allowing the court to strike any invalid terms without voiding the entire contract). *Cf. Dale*, 498 F.3d at 1224 (declining to compel arbitra-

tion and invalidating entire agreement where the contract contained a clause precluding the severance of unenforceable terms).

In contrast to the class action waiver, the mandatory arbitration provision does not work to immunize Chase or oppress its customers. Indeed, federal law, as well as both Florida and Delaware public policy, support arbitration as a less costly alternative to litigation. *See Shea*, 908 So.2d at 403 ("[A]n arbitration agreement constitutes a prospective choice of forum which 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)); *Graham*, 565 A.2d at 911 ("[T]he public policy of this state favors the resolution of disputes through arbitration.").

Ms. Caban argues that Florida law precludes the arbitration of her FDUTPA claims, yet Chase is exempt from FDUTPA, and these claims cannot survive in any forum. *See Int'l Brokerage & Surplus Lines, Inc.*, 2007 WL 220172, at *9 (citing Fla. Stat. § 501.212(4)). Thus, there is no support for her contention that the arbitration agreement is invalid, and federal and state policies counsel its enforcement.

## III. CONCLUSION

The provision in Chase's cardmember agreement requiring that all claims be arbitrated (or brought in small-claims court) on an individual basis is unconscionable under Delaware law. However, because the severability clause allows this provision to be removed from the contract, and because the arbitration of Ms. Caban's claims is consistent with federal and state policy favoring the enforcement of arbitration

agreements, the motion to compel arbitration [D.E. 10] is GRANTED IN PART. As Ms. Caban has not demonstrated that any claims in the amended complaint are not arbitrable, this case is DISMISSED. *See Lambert v. Austin Ind.,* 544 F.3d 1192, 1195 (11th Cir.2008) (holding that dismissal is appropriate where all of plaintiff's claims are arbitrable).

Any and all pending motions are DENIED AS MOOT. This case is CLOSED.