IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| THE DATA CENTERS, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No.: N15C-02-041 EMD CCLD |
| 1743 HOLDINGS LLC and UNIVERSITY OF DELAWARE | ) ) ) ) |
| Defendants. | ) ) ) |

Submitted:  July 17, 2015
Decided:  October 27, 2015

*Upon Defendants 1743 Holdings LLC and University of Delaware's Motion to Strike Plaintiff The Data Centers, LLC's Jury Demand.*
***GRANTED***

Michael P. Kelly, Esquire, Andrew S. Dupre, Esquire, Christopher A. Selzer, Esquire, Benjamin A. Smyth, Esquire, McCarter & English LLP, Wilmington, Delaware, *Attorneys for Plaintiff The Data Centers, LLC*.

William E. Manning, Esquire, James D. Taylor, Jr., Esquire, Dawn Kurtz Crompton, Esquire, and Allison J. McCowan, Esquire, Saul Ewing LLP, Wilmington, Delaware, *Attorneys for Defendants 1743 Holdings LLC and University of Delaware*.

**DAVIS, J.**

### INTRODUCTION AND PROCEDURAL HISTORY

This is a civil action assigned to the Complex Commercial Litigation Division of the Court. The action involves the duties, rights and remedies of The Data Centers, LLC ("TDC"), 1743 Holdings LLC ("Holdings"), and the University of Delaware ("University" and, collectively with Holdings, "Defendants") with respect to a seventy-five-year Ground Lease Agreement ("Lease") and other related agreements. In this case, TDC alleges that the

Defendants breached the Lease and other related agreements.  TDC also claims that the Defendants acted in bad faith to frustrate TDC's construction and operation of a data center and power plant on Defendants' property after Defendants agreed to lease its property to TDC for such purposes.  As a result of Defendants' conduct, TDC alleges multiple breaches of contract and tortious interference with prospective economic advantage.  TDC asks the Court to award specific damages in the amount of at least $5 million, general damages, and exemplary and punitive damages.[1]

On February 4, 2015, TDC filed its Complaint ("Complaint") asserting five (5) claims, or counts, for relief against Defendants:  (1) breach of contract against Holdings for breaching provisions of the Lease (Count I); (2) breach of the duty to indemnify as set forth in the Lease against Holdings  (Count II); (3) breach of the implied covenant of good faith and fair dealing against Holdings (Count III); (4) breach of contract against the University for its failure to negotiate in good faith a Steam Sale Agreement (Count IV); and (5) tortious interference with prospective economic advantage against Defendants (Count V).  Not including the exhibits, the Complaint is sixty-six (66) pages long and includes two hundred and fifty-seven (257) numbered paragraphs.  TDC demanded a trial by jury on all counts in the Complaint.

On March 19, 2015, Defendants filed Defendants 1743 Holdings LLC and University of Delaware's Motion to Strike Plaintiff The Data Centers, LLC's Jury Demand (the "Motion"), moving to strike the Jury Trial Demand.  Defendants contend that TDC waived its right to a jury trial for all Counts in the Complaint via contractual provisions in the Lease and a certain Environmental Indemnity and Release Agreement (the "Indemnity Agreement). [2]

---

[1] Compl. at 66.
[2] The Indemnity Agreement is exhibit C to the Lease.  *See* Compl., Ex. A.

On April 20, 2015, TDC filed Plaintiff The Data Centers, LLC's Response in Partial Opposition to Defendants 1743 Holdings LLC and University of Delaware's Motion to Strike Jury Demand ("Response"). TDC agrees that it waived its right to a jury trial on Counts I, II, and III against Holdings; however, TDC contends that it did not waive its right to a jury trial for claims brought against the University and for Counts IV and V of the Complaint. Further, TDC argues that ruling on the Motion would be premature and is not appropriate until the close of discovery because the terms of the waiver provisions are ambiguous.

On May 8, 2015, Defendants filed Defendants' Reply in Support of Their Motion to Strike Jury Demand ("Reply") requesting the Court to grant the Motion.

On July 17, 2015, the Court held a hearing on the Motion, the Response and the Reply. All parties appeared at the hearing. After considering the Motion, the Response, the Reply, and the arguments made at the hearing, the Court took the matter under advisement. This is the Court's decision on the Motion. As set forth below, the Court finds that TDC waived its right to trial by jury for all Counts asserted in the Complaint against both Holdings and the University. Accordingly, the Motion is **GRANTED**.

FACTUAL BACKGROUND

A.      The Project

Between 2010 and 2012, TDC investigated several competing locations for the construction and operation of a data center[3] and power plant to electrically power the center

---

[3] The United States Environmental Protection Agency defines "data center" as:

> A facility housing electronic equipment used for data processing, data storage, and communications networking; Houses server, network, and computer equipment; May have environmental controls; May contain or link to an uninterruptible, redundant and/or backup power supply; May be protected by physical security and protection devices or systems (*e.g.*, closed circuit monitoring, fire suppression); May be built for redundancy[.]

Compl. ¶ 26.

3

("Project").[4] In the course of TDC's investigation, "the STAR Campus" – a 272-acre parcel of land owned by Defendants – became a candidate to host the Project.[5] In November 2012, after a competitive bidding process, TDC publicly announced its acceptance of Defendants' offer to host the Project.[6]

## B. The Contracts

According to the Complaint, to facilitate the Project, TDC was to enter into three major contracts: (1) the Lease with Holdings to provide land on which to build and operate the Project facilities; (2) the Power Purchase Agreement ("PPA") with Delaware Municipal Electric Corporation ("DEMEC") to sell excess electricity produced by the power plant; and (3) the Steam Sale Agreement with the University to sell excess steam generated by the Project to the University and its affiliates.[7]

### 1. The Lease

On December 14, 2012, Holdings and TDC executed the Lease.[8] The University did not sign the Lease.[9] While the University did not sign the Lease, the Lease provides that the University is the parent of Holdings, and that the University and Holdings partnered together to attract TDC to the STAR Campus.

The Indemnity Agreement is attached to the Lease.[10] Moreover, the Lease expressly refers to the Indemnity Agreement in Sections 6.7 and 11.2.[11] The University, Holdings, and

---

[4] *Id.*, ¶¶ 25, 30.
[5] *Id..*, ¶ 18, 30.
[6] *Id.*, ¶ 73.
[7] *Id.*, ¶ 74.
[8] *Id.*, Ex. A, Lease at 47.
[9] *Id.*, Ex. A, Lease at 47.
[10] *Id.*, Ex. A, Lease at Ex. C.
[11] *Id.*, Ex. A, Lease, §§ 6.7 and 11.2.

TDC all signed the Indemnity Agreement.[12]  Scott R. Douglas signed on behalf of Holdings on the Lease, and for both Holdings and the University on the Indemnity Agreement.[13]

Both the Lease and the Indemnity Agreement provide jury waiver provisions.  Section 36.1 of the Lease provides:

> Waiver of Jury Trial
>
> Each party hereto irrevocably waives any and all rights it may have to demand a trial by jury for any action, proceeding or counterclaim arising out of or in any way related to this Lease or the relationship of the parties.  This waiver extends to any and all rights to demand a trial by jury arising from any source, including but not limited to, the Constitution of the United States, the Constitution of any state, common law or any applicable statute or regulation.  Each party hereby acknowledges that it is knowingly and voluntarily waiving the right to demand trial by jury.[14]

Section 11 of the Indemnity Agreement provides:

> **WAIVER OF JURY TRIAL.  THE INDEMNITOR AND INDEMNITEE BY ITS ACCEPTANCE HEREOF IRREVOCABLY WAIVE ANY AND ALL RIGHTS THEY MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS AGREEMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED IN ANY SUCH DOCUMENTS.  THE INDEMNITOR AND INDEMNITEE ACKNOWLEDGE THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.[15]**

### 2.    The PPA

On December 17, 2012, DEMEC issued a formal Letter of Intent ("Electricity LOI") to negotiate the PPA to purchase excess electricity generated by the Project.[16]  According to the Complaint, DEMEC issued the Electricity LOI contemporaneously with the execution of the

---

[12] *Id.*, Ex. A, Lease at Ex. C at 6-7.
[13] *Id.*, Ex. A, Lease at 47 and Lease at Ex. C at 6-7.
[14] *Id.*, Ex. A, Lease at 36.1.
[15] *Id.*, Ex. A, Lease, Ex. C §11 (bold in the original).
[16] *Id.*, ¶ 85.

Lease, and TDC would not have signed the Lease without the Electricity LOI.[17] On April 18, 2013, DEMEC and TDC memorialized essential terms of an agreement for DEMEC to purchase electricity from TDC in a final term sheet ("PPA Term Sheet").[18] TDC presented DEMEC with a final version of the PPA in April 2014.[19] DEMEC never signed the PPA because, according to the Complaint, Defendants breached the Lease and terminated the Project.[20] Defendants' breach of the Lease and DEMEC's failure to sign the PPA provide the basis for TDC's tortious interference with prospective economic advantage action against Defendants.

### 3. Steam Sale Agreement

On December 14, 2012, the University issued a Letter of Interest ("Steam LOI") expressing interest in purchasing steam generated by the Project. According to the Complaint, TDC would not have signed the Lease without the Steam LOI, and "the University's promise to purchase steam from the Project was an important factor in the University's winning bid."[21] In addition, the Lease creates an agreement between Defendants and TDC "to evaluate the opportunity for [TDC] to provide steam capacity to the University."[22] The University's failure to negotiate the Steam Sale Agreement in good faith provides the basis for TDC's breach of contract action against the University.

## C. Defendants' Termination of the Project

In a letter dated July 10, 2014, Holdings terminated the Project and the Lease, giving rise to the current litigation between the parties.

---

[17] *Id.*, ¶ 85-86.
[18] *Id.*, ¶ 89.
[19] *Id.*, ¶ 93.
[20] *Id.*
[21] *Id.*, ¶ 102.
[22] *Id.*, Ex. A, Lease, § 9.14.

The Court may strike any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter from any pleading.[23] The applicable test in determining whether to strike is whether the challenged averment is relevant to an issue in the case and whether the averment is unduly prejudicial.[24] The Court will grant a motion to strike only where the contentious material is unduly prejudicial.[25] Where a party effectively waives its right to trial by jury in a contract, the Court may, upon motion, strike the party's demand for a jury trial from the pleading.[26]

Article I, Section 4 of the Delaware Constitution recognizes the right to trial by jury in certain civil actions.[27] A person is entitled to a jury trial where the right existed at common law, for example, actions arising out of a breach of contract.[28] Nevertheless, a party may waive the right to trial by jury several ways, including by contract.[29] In Delaware, contractual provisions that waive the contracting parties' right to trial by jury have been held to be neither unconscionable nor against public policy.[30]

In *Wilmington Trust Co. v. Renner's Paving, LLC,* the Superior Court held:

> [A] party seeking to preclude his opponent from a jury trial in a case in which it is otherwise available must present evidence sufficient to show that the parties agreed to waive a jury trial and that the terms of that agreement are sufficiently "conspicuous" as to demonstrate that a party signing such an agreement would have been on notice of the term upon a simple reading thereof. A party resisting such a motion must then produce record evidence that demonstrates there are

---

[23] Del. Super. Civ. R. 12(f).

[24] *Mills v. Gosling Creek, Inc.*, 1993 WL 485901, at *2 (Del. Super. Oct. 6, 1993) (citations omitted).

[25] *Vannicola v. City of Newark*, No. 07C-03-040, 2010 WL 5825345, at *8 (Del. Super. Dec. 21, 2010).

[26] *See Wilmington Trust Co. v. Renner's Paving, LLC*, No. N10L-11-146, 2013 WL 1442366 (Del. Super. Mar. 27, 2013).

[27] *CIT Commc'ns Finance Corp. v. Level 3 Commc'ns, LLC*, No. 06C-01-236, 2008 WL 2586694, at *5 (Del. Super June 6, 2008).

[28] *Seaford Associates v. Hess Apparel, Inc.*, No. 92C-10-11, 1993 WL 258723, at *1 (Del. Super. June 22, 1993) (citing *Graham v. State Farm Mut. Auto. Ins.*, 565 A.2d 908, 911-12 (Del. 1989)).

[29] *Id.* (citing *Tracienda Corp. v. Daimler Chrysler AG*, No. 00-993-JJF, 2003 WL 22769051, at *2 (D. Del. Nov. 19, 2003), *aff'd*, 502 F.3d 212 (3rd Cir. 2007)).

[30] *Wilmington Trust Co. v. Renner's Paving, LLC*, No. N10L-11-147, 2013 WL 1442366, at *5 (Del. Super. Mar. 27, 2013) (citing *Graham* 565 A.2d at 912)).

7

countervailing circumstances that makes enforcement of such a waiver inappropriate.[31]

Where a waiver provision is clear and unambiguous, the Court will not consider parol evidence and will only look at the four corners of the document memorializing the waiver to construe its meaning and effect.[32] Where a waiver provision is ambiguous, the Court will defer ruling on a motion to strike a jury demand until after discovery, because "fairness warrants that a decision [regarding the scope of ambiguous jury waiver provisions] be deferred until after discovery is complete."[33]

## DISCUSSION

### A. The Lease and the Indemnity Agreement Include Conspicuous Jury Waiver Provisions.

TDC does not contend that the jury waiver provisions are inconspicuous or that it lacked notice of the provisions. In the Response, in fact, TDC acknowledges the existence of such provisions, and concedes their application to Counts I, II, and III of the Complaint.[34] The Court finds sufficient evidence demonstrating that the parties agreed to waive a jury trial. The Court also finds that the terms of the agreement were sufficiently conspicuous to put the signing parties on notice of their existence.

### B. The Lease and the Indemnity Agreement Provide Clear and Unambiguous Waivers of the Right To Trial By Jury.

In *CIT Communications Finance Corp.*, the Court found a jury waiver provision, similar to the provisions presented here, to be clear and unambiguous. In that case, the parties waived a

---

[31] *Wilmington Trust Co.*, 2013 WL 1442366, at *5.
[32] *CIT Commc'ns Fin. Corp.*, 2008 WL 2586694, at *5 (citations omitted).
[33] *Cantor Fitzgerald, Inc. v. Cantor Fitzgerald, L.P.*, No. 00C-05-151, 2001 WL 589028, at *2 (Del. Super. May 24, 2001) (citations omitted).
[34] Resp., ¶ 10.

8

jury trial "in any lawsuit . . . arising out of or related to [the] agreement . . . or the dealings or relationship between or among lessor, lessee, seller or any other person."[35]

Here, the waiver provision of the Lease extends to "any action, proceeding or counterclaim arising out of or in any way related to [the] Lease or the relationship of the parties."[36]  Similarly, the Indemnity Agreement's waiver provision extends to "any action, proceeding or claim of any nature relating to [the] agreement, any documents executed in connection with [the] agreement or any transaction contemplated in any such documents."[37]  The provisions here are even more clear and unambiguous than the provision in *CIT Communications Finance Corp.*  The waiver provision of the Lease applies to any action arising out of or in *any way* related to the Lease.  The waiver provision of the Indemnity Agreement applies to any action of *any nature* relating to the Indemnity Agreement.

Nevertheless, TDC argues that ruling on the Motion before discovery would be premature, because the language "in connection with" as set forth in the Indemnity Agreement is ambiguous.  The Court disagrees.

The determination of whether a contractual term is ambiguous lies within the sole province of the Court.[38]  Language is not rendered ambiguous simply because the parties differ concerning its meaning or the parties do not agree upon its proper construction.[39]  A contract is ambiguous "only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[40]  In *Wilmington Trust*

---

[35] *CIT Commc'ns Fin. Corp.*, 2008 WL 2586694, at *5.
[36] Compl., Ex. A, Lease, § 36.1.
[37] Compl., Ex. A, Lease, Ex. C, § 11.
[38] *Osborn ex re. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010).
[39] *Cantor Fitzgerald, Inc.*, 2001 WL 589028, at *2.
[40] *Id.*

9

*Co. v. Renner's Paving, LLC*, this Court granted a plaintiff's Motion to Strike a jury demand based on a contractual provision containing "in connection with" language.[41]

TDC relies on a case decided by the United States District Court for the District of Connecticut and argues that the court held the phrase "in connection with" to be ambiguous.[42] In fact, the court in that case found the *term* "Loan Documents" to be ambiguous.[43] The contract at issue defined Loan Documents as "the Security Agreement and other documents executed under or in connection with the Security Agreement."[44] Without more information to decipher what other documents the definition included, the court concluded that "Loan Documents" was an ambiguous term. Based on the record before the Court in this case, however, the phrase "in connection with" is not ambiguous; it is clear that such a phrase includes the Lease and any transactions contemplated by it. First, the Indemnity Agreement is attached to the Lease as Exhibit C. Second, the Lease refers to the Indemnity Agreement in Sections 6.7 and 11.2 of the Lease. Third, there are 44 sections in the Lease, and the Indemnity Agreement begins at Section 45 rather than Section One. Fourth, the Indemnity Agreement provides the Indemnity Agreement as a "condition to negotiating the Lease."[45]

Accordingly, the jury waiver provisions set forth in the Lease and the Indemnity Agreement are clear and unambiguous, and it is not premature for the Court to rule on the Motion at this stage of the litigation.

---

[41] *Wilmington Trust Co. v. Renner's Paving, LLC*, 2013 WL 1442366, at *6.
[42] *Gen. Elec. Capital Corp. v. Anderson*, No. 3:13-cv-00228, 2015 WL 575159, at *4 n.4 (D. Conn. Feb. 11, 2015).
[43] *Id.*
[44] *Id.*
[45] Compl., Ex. A, Ex. C, ¶ 3.

**C.    TDC Waived Its Right To Demand a Jury Trial For Claims Brought Against the University.**

TDC contends that the jury waiver provision of the Lease does not protect the University because the University did not sign the Lease. To support its contention, TDC relies on *Seaford Associates*,[46] where this Court denied a Motion to Strike a jury demand with regard to individual defendants who did not sign a lease. However, the issue in *Seaford Associates* was whether a *non-signing party* is precluded from demanding a jury trial in light of a waiver provision. The issue here is whether a *signing party* is precluded from making such a demand in actions brought against a non-signing party. The Lease does not limit the waiver to actions brought against the parties who signed the lease. Instead, the waiver extends to "any action . . . arising out of or in any way related to [the] Lease or the relationship of the parties."[47]

Assuming, however, that the University is not directly protected by the Lease's jury waiver provision, TDC is still precluded from demanding a jury trial for claims against the University that relate to the Lease by virtue of the Indemnity Agreement. The Indemnity Agreement – to which the University and TDC were signatories – provides a waiver of the right to trial by jury for claims of any nature relating to the Indemnity Agreement, any documents executed in connection with the Indemnity Agreement, or any transaction contemplated in such documents.[48] Because the Lease is a document executed in connection with the Indemnity Agreement,[49] TDC is precluded from demanding a jury trial for any claims against the University that relate to the Indemnity Agreement, the Lease or transactions contemplated by such documents.

---

[46] *Seaford Assocs.*, 1993 WL 258723, at *1.
[47] Compl., Ex. A, Lease, § 36.1.
[48] Compl., Ex. A, Ex. C, § 11.
[49] *See* discussion *supra* Part B.

11

**D.** **TDC Waived Its Right To Demand a Jury Trial for Counts IV and V of the Complaint.**

This Court has held, in addressing the scope of jury trial waiver provisions, that broad language of a lease provision waiving the right to trial by jury, for any claim arising out of or relating to the lease expanded coverage of that provision to encompass the plaintiff's conversion and unjust enrichment claims.[50] Furthermore, the Delaware Supreme Court held that contractual provisions providing for arbitration of disputes required arbitration of claims "that touch on the legal rights created by the contract."[51]

Here, the waiver provisions contain broad and sweeping language. The provisions waive the right to a trial by jury for actions in any way related to the Lease and for actions of any nature relating to the Indemnity Agreement or any documents executed in connection with it. Counts IV and V fit within the category of actions contemplated by the Lease and Indemnity Agreement. Moreover, using the Delaware Supreme Court's language, Counts IV and V touch on the legal rights created by the Lease.

In Count IV, TDC alleges the University breached its contractual obligation to negotiate in good faith to purchase steam from TDC as set forth in the Steam LOI. The University's alleged obligation to engage in good faith negotiations is related to the Lease. First, TDC admits that it would not have entered the Lease without the Steam LOI and that the University's promise to negotiate in good faith was an important factor in TDC's decision to accept the University's bid.[52] Second, the Lease itself refers to the University's obligation "to evaluate the opportunity

---

[50]*Id. See Curtis Center L.P. v. Sumitomo Trust & Banking Co.,* 1995 WL 365411, at *2 (E.D. Pa. June 15, 1995) (recognizing that identical jury trial waiver language is "sweeping" and encompasses such claims as fraud, bad faith and misappropriation of trade secrets).

[51] *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 151 (Del. 2002).

[52] Compl., ¶ 102.

for [TDC] to provide steam capacity to the University."[53]  Accordingly, Count IV is a claim related to the Lease, and, under the jury waiver provisions of the Lease and the Indemnity Agreement, TDC is precluded from demanding a jury trial.

In Count V, TDC alleges that Defendants committed tortious interference with prospective economic advantage.  TDC's claim to a prospective economic advantage is related to the Lease.  First, DEMEC issued the Electricity LOI – the document that gave rise to the legal right asserted by TDC – contemporaneously with the Lease.[54]  Second, TDC admits that it would not have entered the Lease without the Electricity LOI.[55]  Third, in the Complaint, TDC indicates that Defendants' breach of the Lease gave rise to its tortious interference with prospective economic advantage claim.[56]  Accordingly, Count V is a claim related to the Lease, and, under the jury waiver provisions of the Lease and the Indemnity Agreement, TDC is precluded from demanding a jury trial.

## CONCLUSION

The Court finds that the jury waiver provisions of the Lease and the Indemnity Agreement are clear and unambiguous and that the waivers are applicable to all claims set forth in the Complaint against Defendants.  Accordingly, the Defendants' Motion to Strike Plaintiff's Jury Demand is **GRANTED.**

Dated: October 27, 2015
Wilmington, Delaware

/s/ *Eric M. Davis*
Eric M. Davis, Judge

---

[53] Compl., Ex. A, Lease, § 9.14.
[54] Compl., ¶ 85.
[55] *Id.*, ¶ 86.
[56] *Id.*, ¶ 73, 256(b).