**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| JERZY WIRTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2024-0144-BWD |
| | ) | |
| BLAKE EDWARDS and BEAU | ) | |
| EDWARDS, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER IMPOSING EQUITABLE LIEN

WHEREAS:

A.      On February 16, 2024, plaintiff Jerzy Wirth ("Plaintiff") initiated this action through the filing of a Verified Complaint (the "Complaint") seeking, among other things, an order directing defendants Blake J. Edwards, Beau A. Edwards (together, "Defendants") and minor children B.E. and G.E. (together, the "Minor Defendants") to specifically perform obligations under two agreements, dated November 8, 2023 and November 12, 2023 (the "Agreements"), for the sale of real property located at 1303 Chalet Drive in Wilmington, Delaware (the "Property"). Verified Compl., Dkt. 1.

B.      When this action was filed, Defendants each owned a respective one-third interest in the Property and the Minor Defendants each owned a respective one-sixth interest in the Property.  Pl.'s 6-13-2025 Trial Ex. [hereinafter PX] 6.

C. On May 10, 2024, the Court entered an order appointing an attorney *ad litem* to represent the Minor Defendants. Dkt. 10.

D. On November 25, following a hearing, the Court entered an Order of Partial Settlement, approving a settlement between Plaintiff and the Minor Defendants (the "Initial Settlement") in which Plaintiff agreed to purchase, and the Minor Defendants agreed to sell, the Minor Defendants' respective one-sixth interests in the Property in exchange for a cash payment. Dkts. 55–56. The Initial Settlement expressly stated that "[t]hese terms have been agreed upon . . . in light of the Minors' combined 1/3 interest in the Property, on the one hand, and Plaintiff's satisfaction of mortgages on the Property and payment of taxes, on the other." Stip. and Order of Partial Settlement at 6, Dkt. 55.

E. On June 4, 2025, the Court entered an order approving a revised settlement between Plaintiff and the Minor Defendants (the "Revised Settlement") in which Plaintiff agreed to purchase, and the Minor Defendants agreed to sell, the Minor Defendants' respective one-sixth interests in the Property in exchange for a cash payment. Stip. and Order Am. Partial Settlement, Dkt. 83. The Revised Settlement amended certain terms of the Initial Settlement and stated that "[a]ll other provisions of the [Initial] Settlement remain in full force and effect." *Id.* at 5.

F. On June 13, the Court held a one-day trial in this matter. Dkt. 90. At the conclusion of trial, the Court issued an oral post-trial ruling, finding that Plaintiff

2

failed to prove by clear and convincing evidence that he is entitled to specific performance of the Agreements. The Court explained, in part:

> Specific performance is an extraordinary remedy not to be awarded lightly, granted only to a party who proves by clear and convincing evidence that he is entitled to specific performance and that he has no adequate remedy at law.
>
> To prove entitlement to specific performance, a party must establish by clear and convincing evidence that, one, a valid enforceable agreement exists between the parties; two, the party seeking specific performance is ready, willing, and able to perform under the terms of the agreement; and three, a balancing of the equities favors an order of specific performance. The decision as to the availability of specific performance rests within the sound discretion of this Court.
>
> Defendants have raised, among other defenses, that the November 8th and 12th contracts are not valid, enforceable agreements because they are unconscionable. Specifically, defendants raised the unconscionability defense in their joinder to the minors' opposition to plaintiff's renewed motion for judgment on the pleadings, and I ruled in my January 13, 2025, order denying motion for judgment on the pleadings that the defendants' defenses, including the unconscionability defense, raised material issues of fact that could not be resolved on summary judgment. With a fully developed trial record, I resolve that defense now.
>
> "The doctrine of unconscionability stands as a limited exception to the law's broad support for freedom of contract." That is a quote from *James v. National Financial, LLC*, 132 A.3d 799.
>
> "When parties have ordered their affairs voluntarily through a binding contract, Delaware law is strongly inclined to respect their agreement, and will only interfere upon a strong showing that dishonoring the contract is required to vindicate a public policy interest even stronger than freedom of contract." That quote comes from *Libeau v. Fox*, 880 A.2d 1049. Unconscionability is a concept that is used sparingly. A finding of unconscionability generally requires the

3

taking of an unfair advantage by one party over the other. "A court must find that the party with superior bargaining power used it to take unfair advantage of his weaker counterpart." That is a quote from *Graham v. State Farm Mutual Automobile Insurance Company*, 565 A.2d 908.

For a contract clause to be unconscionable, its terms must be so one-sided as to be oppressive. I refer the parties and future readers of this transcript ruling to Chancellor Allen's excellent opinion in *Ryan v. Weiner*, 610 A.2d 1377, for a deep explanation of Delaware law on unconscionability and citation to a number of real property cases "in which courts have set aside or refused to enforce conveyances because of the unfairness of price and other circumstances of inequitable or oppressive conduct."

In addition, in *Fritz v. Nationwide Mutual Insurance Company*, 1990 WL 186448, this Court identified ten factors to guide the unconscionability analysis.

Those factors include[:] "(1) The use of printed form or boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry wide standards offered on a take it or leave it basis to the party in a weaker economic position . . . ; (2) a significant cost-price disparity or excessive price; (3) a denial of basic rights and remedies to a buyer of consumer goods . . . ; (4) the inclusion of penalty clauses; (5) the circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect . . . ; (6) the hiding of clauses which are disadvantageous to one party in a mass of fine print trivia or in places which are inconspicuous to the party signing the contract . . . ; (7) phrasing clauses and language that is incomprehensible to a layman or that divert his attention from the problems raised by them or the rights given up through them; (8) an overall imbalance in the obligations and rights imposed by the bargain; (9) exploitation of the underprivileged, unsophisticated, uneducated and the illiterate . . . ; and (10) inequality of bargaining or economic power."

The second, eighth, ninth, and tenth factors of that test support a finding in this case that the November 8th and 12th agreements are unconscionable and therefore unenforceable. In my view, the parties'

4

agreements reflect a shocking cost-price disparity or excessive price. Under the agreements, Wirth agreed to pay the defendants just $10,000 to avoid foreclosure of a property that appears to have had well over $100,000 in equity.

Although, in theory, the defendants avoided a potential deficiency judgment in a foreclosure proceeding, when I consider the amounts due on the mortgage and then the price at which Wirth listed the property shortly after the parties signed the agreement, the benefit of avoiding a remote deficiency judgment is shockingly small compared to the likely benefit to Wirth of immediately capitalizing on the more than $100,000 in equity in the property.

The overall imbalance in the obligations and rights under the agreements also supports a finding of unconscionability, as the agreements permitted Wirth to dictate the timing of closing and appear to impose no timing obligation for Wirth to satisfy the mortgages.

And then, importantly, the inequality of bargaining or economic power between the parties here supports a finding of unconscionability. While Wirth testified to having an understanding of foreclosure proceedings, purports to have expertise in finance, and claimed to advise the defendants on their potential options in the foreclosure, the defendants, by contrast, have no such familiarity with the foreclosure process.

Under these facts and taking into account the several hours of testimony I heard today, I conclude, as Chancellor Allen did in *Ryan v. Weiner*, "that this represents that unusual case in which a court of equity cannot let stand an executed contract but is obligated to grant the remedy of rescission."

Tr. of 6-13-2025 Trial [hereinafter Tr.] at 179:2–184:13, Dkt. 107.

G.     The Court further found that the parties should be returned to the

position they were in prior to entering into the Agreements:

Because the contract is unconscionable, it is voidable. The proper remedy is to declare the agreements invalid. That requires

5

returning the parties to the position they were in prior to entering the contracts.

> [T]he defendants must repay the amounts Wirth paid to them directly, as well as the amounts that Wirth paid to the mortgage companies to satisfy the mortgages.

> Although Wirth did not present evidence at trial proving the amounts he paid toward the property, I will permit him to supplement the record with that evidence within 30 days, and I will enter an appropriate order implementing this ruling after that.

> To ensure that Wirth is repaid for the amounts owed, I will also impose an equitable lien on the property until the amounts are paid. That remedy should put the parties back in the position they were in before the agreements were signed.

*Id.* at 184:21–185:16.

H.    At Plaintiff's request, on October 16, the Court held another evidentiary hearing to "address the terms and amount of the equitable lien referenced in the Court's post-trial ruling." Dkts. 99–100. Based on the evidence presented at trial and in connection with the October 16 hearing, Plaintiff has demonstrated that he made the following payments under the Agreements, totaling $169,046.00:

a.    $161,370.22 to Rocket Mortgage on November 10, 2023, in satisfaction of a mortgage, loan document number 201704050017045. Ex. B, Dkt. 96; PX 9.

b.    $5,000.00 to Defendants on November 12, 2023. PX 6.

6

c.     $2,675.78 in taxes and other fees on September 23, 2024.  PX 15.[1]

NOW, THEREFORE, IT IS HEREBY ORDERED, this 22nd day of October 2025, as follows:

1.     Plaintiff shall have an equitable lien against the Property at 1303 Chalet Drive, Wilmington, Delaware 19808, in the amount of **$112,697.33**,[2] until said lien is paid-in-full and satisfied of record.

2.     Plaintiff's request for an additional award of interest is DENIED for the following reasons.

---

[1] Plaintiff has not proven how much he paid to satisfy a second mortgage with Citizens Bank, loan document number 201609010044342.  PX 9.  Plaintiff submitted a January 5, 2024 letter addressed to Citizens Bank's Mortgage Department and CEO, requesting that Citizens Bank reassign the mortgage to Plaintiff.  Ex. C, Dkt 96.  That letter attached a copy of a November 16, 2023 cashier's check for $72,130.90. *Id.*  On January 23, 2024, Citizens Bank released the mortgage.  PX 9.  But it is unclear whether Citizens Bank accepted Plaintiff's $72,130.90 cashier's check, or if Plaintiff paid some other amount to satisfy the mortgage.  **Within thirty days, Plaintiff may supplement the record with a receipt or other communication from Citizens Bank demonstrating the amount Plaintiff actually paid to satisfy the Citizens Bank mortgage.**  The Court will consider increasing the amount of the lien if Plaintiff provides such additional evidence.

[2] This sum reflects two-thirds of the amounts that Plaintiff paid under the Agreements, representing the remaining Defendants' proportionate share of gains under the Agreements.  Plaintiff is not entitled to the gains that the Minor Defendants received under the Agreements because the Initial Settlement and Revised Settlement extinguished Plaintiff's claims against the Minor Defendants.  Dkts. 55, 83; *cf. In re Mindbody, Inc., S'holder. Litig.*, 332 A.3d 349, 407–08 (Del. 2024) ("[A] release of some joint tortfeasors . . . reduces the claim against the remaining tortfeasors . . . .").

a.      Plaintiff contends that he is entitled to an award of interest to compensate him for the loss of use of the funds he paid under the Agreements. Plaintiff asserts that he is entitled to an award of interest as a "matter of right." Plaintiff's position is incorrect.  Prejudgment interest is a "matter of right" to compensate a successful plaintiff for a money judgment.  *See Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992); *LCT Cap., LLC v. NGL Energy P'rs LP*, 2023 WL 4102666, at *5 (Del. Super. June 20, 2023), *aff'd in part, rev'd in part on other grounds*, 319 A.3d 335 (Del. 2024) ("A prevailing plaintiff is due prejudgment interest as a matter of right." (citing *Moskowitz v. Mayor & Council of Wilmington*, 391 A.2d 209, 210 (Del. 1978))).  But Plaintiff did not prevail in this litigation.

b.      Plaintiff sought an order of specific performance compelling Defendants to comply with the Agreements, but the Court rejected that claim, finding the Agreements were unconscionable and therefore unenforceable.  *See* Tr. at 184:21–23.  The Court further found, however, that to avoid a windfall for Defendants, equity requires imposition of a lien on the Property in the amount of the funds Plaintiff paid under the unenforceable Agreements.  *See* Tr. at 185:12–16.[3]

---

[3] *See Oldham v. Taylor*, 2003 WL 21786217, at *5 (Del. Ch. Aug. 4, 2003) ("[S]ubrogation rights arise to prevent unjust enrichment of a party whose obligation is fully performed by another."); *see also Jones v. Sacramento Sav. & Loan Ass'n*, 248 Cal. App. 2d 522, 531 ("The circumstances do not call for an award of interest as part of the lien, either before or after judgment.  The lien is not created to enforce an express or quasi contractual obligation, but will originate in the decree of equity.").

Although Defendants cannot, in equity, retain the benefit of sums paid to extinguish debt on the Property, it would be unfair and inappropriate to magnify the amount of the lien on the Property in Plaintiff's favor. An equitable lien in the amount of the funds Plaintiff actually paid, without interest, avoids a windfall for Defendants without rewarding Plaintiff for entering into unconscionable contracts.[4]

      c.    In matters of equity, the Court has discretion over interest. *Korn v. Korn*, 2015 WL 5968856, at *1 (Del. Ch. Oct. 14, 2015). For the reasons above, the Court exercises its discretion here to deny Plaintiff's request for interest.

      3.    Plaintiff shall record a copy of this Order in The Office of the Recorder of Deeds in and for New Castle County, Delaware, which shall serve as an equitable lien against the Property and until the said amounts due are paid-in-full and a satisfaction is filed in the chain of title for the Property.

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor

---

[4] To be clear, the equitable lien is not intended to compensate Plaintiff for the loss of capital he paid pursuant to the unconscionable Agreements; it is intended solely to avoid an inequitable windfall to Defendants. *See Restatement (Third) of Restitution and Unjust Enrichment* § 63 (Am. L. Inst. 2011) ("Recovery in restitution to which an innocent claimant would be entitled may be limited or denied because of the claimant's inequitable conduct in the transaction that is the source of the asserted liability."); *cf. Patel v. Dimple, Inc.*, 2007 WL 2353155, at *15 (Del. Ch. Aug. 16, 2007) (exercising "discretion in these odd circumstances involving co-conspirators in an illegal scheme to deny pre-judgment interest to both sides"); *Chang's Hldgs., S.A. v. Universal Chems. & Coatings*, 1994 WL 681091, at *2 (Del. Ch. Nov. 22, 1994) (exercising discretion to set interest based on assessment of parties' "relative fault").