COURT OF CHANCERY
OF THE
STATE OF DELAWARE

ABIGAIL M. LEGROW
MASTER IN CHANCERY

NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report:  June 17, 2015
Submitted:  March 6, 2015

Catherine Di Lorenzo, Esquire
Legal Services Corporation of Delaware, Inc.
100 West 10th Street, Suite 203
Wilmington, DE 19801

Thomas C. Marconi, Esquire
Losco & Marconi, P.A.
1813 N. Franklin Street
Wilmington, DE 19802

     Re:   *Joan Fehl v. Helena Paolina*
             C.A. No. 9047-ML

Dear Counsel:

When the petitioner's home had been foreclosed upon and was on the brink of sheriff's sale, her long-time friend – the respondent – agreed to buy the home and allow the petitioner to live there while she repaid the respondent and repurchased the home.  After she lost her job, the petitioner stopped making payments, but contends the Court should void or rescind the sale of the property to the respondent on the theory that the agreement between the parties was

unconscionable. The respondent, in turn, contends she is the rightful owner of the property and that the Court should award damages to her for the period in which the petitioner lived on the property and failed to make any payments. I agree that the respondent is the rightful owner of the property, but disagree that she is entitled to any damages. This is my final report.

## FACTUAL BACKGROUND

The petitioner, Joan Fehl ("Ms. Fehl"), purchased a home at 723 Bayview Road, Middletown, Delaware (the "Property") in 1993 for $35,000.[1] By May 2006, Ms. Fehl was delinquent on her mortgage and a foreclosure proceeding was filed against her. Judgment was entered against Ms. Fehl and the Property for $101,785.61. The Property was scheduled to be sold at sheriff's sale on September 12, 2006.

Ms. Fehl discussed her financial difficulties with her close friend, the respondent, Helena Paolino ("Mrs. Paolino").[2] Ms. Fehl and Mrs. Paolino met when their children were infants and had been friends for decades. Over the years, Mrs. Paolino provided relatively minor financial assistance to Ms. Fehl when she was in need. In early September 2006, Mrs. Paolino agreed that she and her husband, Carmen Paolino ("Mr. Paolino") would purchase the Property to save it

---

[1] Petition to Void and Rescind Property Transfer (hereinafter "Petition") ¶ 6.
[2] Joint Pretrial Stipulation and Order (hereinafter "Pretrial Order") ¶ 5.

from sheriff's sale and allow Ms. Fehl to continue living there while she made payments to the Paolinos to repurchase the Property.[3]

The agreement between Ms. Fehl and the Paolinos was not reduced to writing, but the parties largely followed its terms for six years. On September 11, 2006, the Paolinos purchased the Property by paying off the mortgage. To make the purchase, the Paolinos initially drew down an existing line of credit, but in October 2006 they obtained a mortgage on the Property.[4] The taxes and insurance on the Property were escrowed, so that the mortgage payments included payments toward those items.[5] The mortgage payments were $969.02 per month.

The parties' course of performance indicates they agreed that Ms. Fehl would pay $1,000 a month, continue to reside in the Property, and bear the cost of maintaining the Property. Although she made payments between 2006 and 2012, Ms. Fehl never paid $12,000 a year.[6] In 2012, Ms. Fehl lost her job and was unable to continue making payments. Here the parties' relationship – already strained by their financial dealings – completely deteriorated. After Ms. Fehl ceased making payments in August 2012, the Paolinos bore all the costs associated

---

[3] Ms. Fehl testified that Mrs. Paolino volunteered this solution, while Mrs. Paolino testified Ms. Fehl suggested it. This factual dispute does not factor into my analysis.
[4] Joint Exhibit ("JX") 7, 8.
[5] JX 9.
[6] See JX 4. Ms. Fehl's records indicate she made the following payments: $5,900 in 2006, $1,800 in 2007, $8,500 in 2008, $9,450 in 2009, $10,235 in 2010, $3,250 in 2011, and $2,000 in 2012.

with the Property, including the mortgage, taxes, and insurance.[7] Mr. Paolino died in January 2013, at which point Mrs. Paolino became the sole owner of the Property. In March 2013, Mrs. Paolino's son, acting on her behalf, notified Ms. Fehl that she was behind in her "rent" and an action would be filed against her if the "rent" was not paid.[8]

A landlord-tenant action was filed against Ms. Fehl in April 2013, but that action was dismissed because the Justice of the Peace Court determined it lacked jurisdiction because the parties' dispute was not a landlord-tenant matter.[9] Ms. Fehl was removed from the Property on July 23, 2013[10] and filed this action on October 29, 2013, seeking an order voiding and rescinding the 2006 transfer of the Property on several independent grounds. The petition contained 8 – at times cryptically described – counts: (1) fraud, (2) negligent misrepresentation, (3) undue influence, (4) lack of consideration, (5) no valid contract/no meeting of the minds, (6) unjust enrichment, (7) unconscionability, and (8) detrimental reliance/promissory estoppel.[11] Mrs. Paolino filed a counterclaim against Ms.

---

[7] Pretrial Order ¶ 14.
[8] *Id.* ¶ 16.
[9] *Id.* ¶ 17.
[10] *Id.* ¶ 18.
[11] Some of these counts might better be described as reasons why Ms. Fehl contends the agreement to sell the property is an unenforceable contract. *See e.g.,* counts 4, 5, 7.

Fehl, arguing that Ms. Fehl breached the parties' agreement by failing to make the payments required of her and by causing significant damage to the Property.

This case was tried on December 5, 2014. Several of Ms. Fehl's claims relied on her theory that the value of the Property at the time the Paolinos bought it vastly exceeded the purchase price. For that reason, Ms. Fehl presented at trial the expert testimony of Earl Loomis, a certified real estate appraiser, who issued a report opining that the Property was worth $240,000 in 2006 when the Paolinos purchased it from Ms. Fehl.[12] Mr. Loomis's estimate of value was based on his assumption that the Property was in "average" condition in 2006. Mr. Loomis abandoned his estimate of value on cross-examination when Mrs. Paolino's counsel presented evidence that on September 6, 2006, New Castle County refused to issue a certificate of occupancy for the Property because of numerous code violations. Mr. Loomis disclaimed his valuation in the face of that evidence:

> Q. (Mr. Marconi): Is this the first time that you've ever heard that New Castle County stated that as of September the 6th of 2006 no certificate of occupancy had been issued?
>
> A. (Mr. Loomis): No, I had not heard that.
>
> Q. Had you known either of those two things, would that have had any affect on your appraisal value of the property?
>
> A. Well, with the code violations I would say yes.

---

[12] JX 6.

Q. As we sit here today do you believe that $240,000 is the accurate appraisal of the property?

A. Knowing these kind of violations I would say no.

Q. You have no idea what the value of the property was in 2006?

A. What I would subtract from the 240 is an estimate of what it would cost to bring the property up to code.

Q. Sitting here today you have no idea what that would be, do you?

A. I have no idea. I'm not a contractor.[13]

Petitioner did not ask Mr. Loomis any questions on redirect or offer any other evidence from which the Court could determine the value of the Property at the time Ms. Fehl sold it to the Paolinos.[14]

At the conclusion of trial, I issued a draft report from the bench (the "Draft Report"). In the Draft Report, I concluded that Ms. Fehl had failed to prove the necessary elements of her claims. I specifically concluded that the claims that depended on Ms. Fehl's contentions about the value of the Property in 2006 failed because she had not provided sufficient proof of value. I also concluded that Mrs. Paolino had failed to prove that she was entitled to any monetary damages because she had not shown the amount of any damage to the Property and had not shown that the parties' agreement entitled her to payment of "rent." I therefore

---

[13] Pet'r's Opening Br. in Supp. of Exceptions to Draft Report ("Pet'r Opening"), Ex. B at 11-12.

[14] *Id.*, Ex. B at 12.

recommended that the Court enter judgment in favor of Mrs. Paolino on the eight counts in the petition, and in favor of Ms. Fehl on the counterclaim. Both parties took exception to that report. This is my final report.

## ANALYSIS

**A. Ms. Fehl has abandoned all claims except Count VII, and that count depends on the Loomis valuation, the accuracy of which Mr. Loomis disclaimed at trial.**

In her exceptions to the Draft Report, Ms. Fehl argues that I erred in discounting Mr. Loomis' valuation report and that, if that valuation is accepted, precedent in this Court and the District Court of Delaware support the conclusion that the transfer of the Property should be rescinded. Although the second part of that argument may have force, there is no basis on which the Court can rely on Mr. Loomis' valuation, and therefore there is not sufficient evidence to reach the question of whether the agreement between Ms. Fehl and the Paolinos was unconscionable.

As a preliminary matter, Ms. Fehl did not take exception to any factual or legal conclusion reached in the Draft Report relating to the five counts in the petition that did not depend on the Loomis valuation.[15] In addition, although the

---

[15] That is, the claims for fraud, negligent misrepresentation, undue influence, "no valid contract/meeting of the minds," and "detrimental reliance/promissory estoppel" do not depend in any way on Ms. Fehl's claims regarding the disparity between the value of the property and the purchase price.

counts for "lack of consideration" and unjust enrichment did depend, to some degree, on the Loomis valuation, Ms. Fehl's brief in support of her exceptions did not address those counts in any way. Ms. Fehl therefore has abandoned those claims by not taking exception to the portions of the Draft Report involving those causes of action.[16]

Ms. Fehl argues that, if the Property was worth $240,000 in 2006, and Ms. Fehl sold it to the Paolinos for $100,000, the sale was unconscionable. Ms. Fehl concedes that this Court typically will not void contracts on the basis that the relative value of the bargain to the parties was not equal. As a general rule, "mere inadequacy of price" will not invalidate a transfer, absent evidence of fraud, duress, or incapacity.[17] That general rule must yield on occasion, however, and the Delaware courts will – with "extreme reluctance" – void a contract for fairness "when all of the facts suggest a level of unfairness that is unconscionable."[18] A contract is unconscionable if there is "an absence of meaningful choice and

---

[16] *See* Ct. Ch. R. 144(a)(1) (2014) ("the only exceptions which may be filed to the final report are those which were filed to the draft report and disallowed, plus exceptions to any changes from the draft report made in the final report."). Rule 144 was revised by the Court effective January 1, 2015, but the parties' exceptions to the Draft Report were dated December 12, 2014 and therefore are governed by the old version of the rule. In substance, however, the revised rule contains the same restriction. *See* Ct. Ch. R. 144(c) (2015).

[17] *Ryan v. Weiner*, 610 A.2d 1377, 1381 (Del. Ch. 1992).

[18] *Id.* at 1381.

contract terms unreasonably favorable to one of the parties."[19]  Ms. Fehl points to a number of decisions in which courts have concluded that a contract was unconscionable when real property is sold for less than half of the property's fair market value.[20]

Any conclusion that the exchange between Ms. Fehl and the Paolinos was unconscionable under this 50% fair market value test requires the Court to accept the Loomis appraisal, which Mr. Loomis himself abandoned on the stand.  Mr. Loomis specifically testified that his $240,000 valuation was not accurate and that he could not provide an opinion as to the value of the Property in 2006.  Ms. Fehl offered no other evidence regarding the value of the Property at the time of sale.  Given that testimony, there was nothing on which the Court could rely to determine that the sale price was unconscionable.

Ms. Fehl argues, however, that the Court should not have been so quick to discount Mr. Loomis' opinion, because Mrs. Paolino failed to provide any evidence regarding the severity of the code violations or their affect on property value.  First, Mr. Loomis, not the Court, discounted his opinion:  he explicitly testified that the valuation he previously offered was not reliable and that he could not offer a revised value for the Property.  Ms. Fehl does not explain why the Court

---

[19] *Tulowitzki v. Atl. Richfield Co.*, 396 A.2d 956, 960 (Del. 1978).

[20] *In re Emery-Watson*, 412 B.R. 670, 675 (Bankr. D.Del. 2009) (citing cases).

should rely on an expert opinion the expert has said is unreliable. Second, it was incumbent upon Ms. Fehl to prove the elements of her claims. Mrs. Paolino did not need to offer evidence regarding the cost to repair the code violations or an alternate value for the Property; when Mr. Loomis abandoned his valuation, Mrs. Paolino had sufficiently rebutted Ms. Fehl's evidence of the value of the Property.

Because Ms. Fehl did not prove how much the Property was worth at the time she sold it to the Paolinos, she cannot prove the sale was unconscionable. I therefore recommend that the Court deny Ms. Fehl the relief she seeks.

### B. Mrs. Paolino is not entitled to damages for the period in which Ms. Fehl lived in the Property without making payments.

Mrs. Paolino argues that the parties agreed that Ms. Fehl could continue to reside in the Property as long as she paid $1,000 a month, and that Ms. Fehl stopped making timely payments in 2012 but continued to live in the Property for at least a year after her last payment.[21] Mrs. Paolino therefore contends she is entitled to approximately $18,000, representing the amount Ms. Fehl should have

---

[21] The record reflects Ms. Fehl made no payments between July 2011 and June 2012, then made no payments between August 2012 and July 2013, when she was removed from the Property. JX 4.

paid in that time period.[22]   According to Mrs. Paolino, it would be inequitable to allow Ms. Fehl to live in the Property for 18 months at no cost.

Mrs. Paolino has established that the parties agreed Ms. Fehl would live in the Property and make payments to the Paolinos to repurchase the Property.  It is undisputed that Ms. Fehl did not make the necessary payments to repurchase the Property.  But there is no evidence that the parties entered into a landlord-tenant relationship that would allow Mrs. Paolino to extract payments from Ms. Fehl other than payments toward repurchasing the Property.  The Justice of the Peace court previously determined there was no landlord-tenant relationship between the parties, and Mrs. Paolino has not challenged or even addressed that conclusion.  In other words, the parties had, at best, an oral agreement that Ms. Fehl would purchase the home from the Paolinos,[23] but did not reach any agreement that Ms. Fehl would make any payments not intended to reduce her debt to the Paolinos.  When Ms. Fehl ceased making payments, she effectively abandoned her repurchase right.  At that time, Mrs. Paolino could have removed Ms. Fehl from the Property, which she eventually did.  Mrs. Paolino elected not to move swiftly to evict Ms. Fehl, and having made that choice she cannot turn to this Court

---

[22] Mrs. Paolino inconsistently seeks $18,000 – calculated based on the parties' agreement of $1,000 a month, or $17,442.00 – calculated based on the mortgage payments Mrs. Paolino made between January 2012 and July 2013.

[23] Neither party raised a statute of frauds defense in this action.

seeking "equitable" relief from that decision. Mrs. Paolino has not suffered any inequity: she purchased the Property from Ms. Fehl, received the benefit of Ms. Fehl's payments between 2006 and 2012, and remains the sole owner of the Property. In this case, an equitable result is one that leaves both parties with the benefit of their bargain.

## CONCLUSION

For the foregoing reasons, I recommend that the Court deny both parties' exceptions and enter judgment in favor of Mrs. Paolino on the eight counts in the petition and against Mrs. Paolino on the counterclaim. This is my final report and exceptions may be taken in accordance with Court of Chancery Rule 144.

Respectfully submitted,

*/s/ Abigail M. LeGrow*

Master in Chancery