# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3502
_____

Baldwin Hackett and Meeks, Inc.

*Plaintiff - Appellant*

v.

Early Warning Services, LLC

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: May 15, 2025
Filed: August 29, 2025
_____

Before COLLOTON, Chief Judge, SMITH and SHEPHERD, Circuit Judges.
_____

SMITH, Circuit Judge.

Baldwin Hackett and Meeks, Inc. (BHMI) sued Early Warning Services, LLC (EWS) for breach of contract and breach of the implied covenant of good faith and fair dealing after EWS unilaterally terminated a lease agreement between the parties for the use of proprietary software that facilitates electronic transactions. The district

court[1] granted summary judgment in favor of EWS, holding that BHMI had failed to state a claim on which relief could be granted because the limitation-of-liability clause in the lease agreement barred the relief that BHMI was seeking. We affirm.

## I. *Background*

BHMI, a Nebraska corporation, provides software for processing electronic transactions. EWS, a financial technology company, is owned by seven of the country's largest banks.[2] EWS owns and operates a digital payment network known as Zelle.[3] In 2016, BHMI and EWS entered into a lease agreement (Lease Agreement) in which BHMI would lease its Concourse Financial Software Suite (Software) that facilitates electronic transactions to EWS for use in its business.[4] The Lease Agreement was on BHMI's letterhead and had EWS marked as the "Customer." R. Doc. 11-1, at 1 (bold omitted). According to the Lease Agreement, once the Software was installed, a 90-day acceptance period was triggered, and the 3-year term commenced upon acceptance. "[U]pon [a]cceptance[,] EWS was obligated to pay BHMI $540,500 per year for [3] years for lease fees ($1,621,500 total), a one-time cost of $90,000, and annual recurring costs of $57,500 for maintenance services for [3] years ($172,500 total), for a total amount of $1,884,000 . . . ." R. Doc. 11, at 3.

The installation of the Software required EWS's assistance in making it operable for EWS's systems because the Software was "not a plug and play

---

[1]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

[2]Bank of America, BB&T, Capital One, JPMorgan Chase, PNC Bank, U.S. Bank, and Wells Fargo.

[3]"Zelle is a digital payments network that allows parties to electronically transfer money between bank accounts." Appellant's Br. at 3.

[4]"One of the primary purposes of the [c]ontract was for EWS to use [the Software] with Zelle." *Id.*

product." *Id.* at 4. EWS and BHMI entered into a separate Vendor Services Agreement (VSA) under which EWS paid BHMI for preinstallation services. EWS paid BHMI approximately $1.6 million under the VSA. In September 2020, EWS notified BHMI that it was indefinitely putting the "project on hold" because of the COVID-19 pandemic and EWS's shift in priorities. R. Doc. 11-2, at 1. In October 2020, BHMI advised EWS that it did not have the right to unilaterally terminate the Lease Agreement and sought assurances that EWS would perform its obligations under the Lease Agreement. EWS agreed to resume work on the project and appointed a new EWS employee to manage the installation. However, in October 2021, EWS suspended the project indefinitely. When BHMI sought clarification, EWS sent a termination notice in which it solidified its intent to permanently suspend the project because the Software was "not compatible with EWS's infrastructure and technology requirements" and consequently was not "workable for EWS's business needs." R. Doc. 11-3, at 1.

On March 3, 2023, BHMI filed a suit in Nebraska state court, alleging a claim for breach of the implied covenant of good faith and fair dealing. BHMI alleged in its complaint that "EWS delayed the [p]roject multiple times" and consequently "prevented BHMI from completing [p]roduction [i]nstallation as contemplated by the parties at the time of contracting." R. Doc. 21, at 6 (internal quotation marks omitted). EWS removed the case to federal court. BHMI filed an amended complaint, adding a claim for breach of contract and seeking $1,884,000 in damages. EWS filed a motion to dismiss BHMI's amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the limitation-of-liability clause in the Lease Agreement barred BHMI from obtaining the relief it sought.

This appeal turns on the meaning of the Lease Agreement's limitation-of-liability clause. The clause is divided into two subparts. The district court characterized Subpart A as the "cap on damages," *see id.* at 15 (internal quotation marks omitted), and Subpart B as the "categorical limitation on damages," *see id.* at 18 (internal quotation marks omitted). Subpart A stated the following:

EACH PARTY'S TOTAL LIABILITY UNDER THIS AGREEMENT FOR ALL LOSSES, CLAIMS, SUITS, CONTROVERSIES, BREACHES OR DAMAGES FOR ANY CAUSE WHATSOEVER, REGARDLESS OF THE FORM OF ACTION OR LEGAL THEORY, SHALL NOT EXCEED THE FEES PAID BY [EWS] TO BHMI UNDER THIS AGREEMENT, EVEN IF THE ACTUAL DAMAGES ARE GREATER THAN THE FEES PAID.

R. Doc. 11-1, at 4. The district court reasoned that "[t]he cap on damages in [Subpart A] is not 'fees owed,' but 'fees paid.'" R. Doc. 21, at 17 (quoting R. Doc. 11-1, at 4). Therefore, "unpaid fees under the Lease Agreement[ ]are unavailable as a matter of law under the cap on damages in Subpart A of . . . the Lease Agreement." *Id.*

The district court stated that it did "not need to consider the limitation in Subpart B" because "the [c]ourt ha[d] already determined that Subpart A bar[red] BHMI's damages claim." *Id.* at 18–19. Nevertheless, the district court held that alternatively, Subpart B also independently barred BHMI's recovery. Subpart B prevented either party from recovering "lost profits, exemplary, punitive, special, incidental, indirect, consequential damages or the like." R. Doc. 11-1, at 4. (capitalization altered). The district court reasoned that "lost profits are not considered consequential damages when 'profits are precisely what the non-breaching party bargained for.'" R. Doc. 21, at 21–22 (quoting *eCommerce Indus., Inc. v. MWA Intel., Inc.*, No. CV 7471–VCP, 2013 WL 5621678, at *47 (Del. Ch. Sept. 30, 2013) (unpublished)). Therefore, the court held that "unpaid fees under the Lease Agreement" were "unavailable lost profits damages as a matter of law under the limitation on liability in [Subpart B] of the Lease Agreement." *Id.* at 23–24 (internal quotation marks omitted). Accordingly, under Subpart A or Subpart B, BHMI would be unable to recover the damages that it sought.

Next, the district court rejected BHMI's contention that the limitation-of-liability clause was unconscionable. The court concluded that two sophisticated parties had negotiated at arm's length to draft a clause that could benefit either party

at the time of drafting. Moreover, the district court rejected BHMI's argument that the Uniform Commercial Code (UCC) applied and that the contract failed its essential purpose. BHMI appeals.

## II. *Discussion*

On appeal, BHMI argues that the district court erred in interpreting the limitation-of-liability clause of the Lease Agreement to bar BHMI's claims. BHMI argues that the district court's interpretation creates an absurd and unconscionable result. Moreover, BHMI argues that the district court erred in holding that the UCC did not apply to the Lease Agreement. We affirm.

### A. *Plain Language Interpretation*

"We review de novo a district court's decision granting a motion to dismiss for failure to state a claim, accepting as true all factual allegations and viewing them in the light most favorable to the non-moving party." *Yang v. Robert Half Int'l, Inc.*, 79 F.4th 949, 961–62 (8th Cir. 2023) (emphasis omitted). We will apply Delaware substantive law in this appeal consistent with the parties' agreement.

Under Delaware law, the court's "goal is to give effect to the intent of the parties." *Weinberg v. Waystar, Inc.*, 294 A.3d 1039, 1044 (Del. 2023). Accordingly, the court "read[s] the contract as a whole and 'enforce[s] the plain meaning of clear and unambiguous language.'" *Id.* (quoting *Manti Holdings, LLC v. Authentix Acquisition Co.*, 261 A.3d 1199, 1208 (Del. 2021)). "In doing so, [the court] endeavor[s] to give each provision and term effect and not render any terms meaningless or illusory." *Id.* (internal quotation marks omitted). "Where an agreement is unambiguous, it should be 'read in full and situated in the commercial context between the parties.'" *Merck & Co., Inc. v. Bayer AG*, No. 2021-0838-NAC, 2023 WL 2751590, at *6 (Del. Ch. Apr. 3, 2023) (unpublished) (quoting *Chi. Bridge & Iron Co. N.V. v. Westinghouse Elec. Co.*, 166 A.3d 912, 926–27 (Del. 2017)). "[I]nterpretations that are commercially unreasonable or that produce absurd results must be rejected." *Id.* (quoting *Manti Holdings*, 261 A.3d at 1211).

"Delaware has a strong presumption in favor of freedom of contract." *eCommerce*, 2013 WL 5621678, at \*45 n.319. The "freedom of contract would suggest that parties to a contract should be entitled to draft agreements so as to avoid certain . . . duties and liabilities that are normally part of a contractual relationship." *Id.* at \*45. Accordingly, "[u]nder Delaware law, limitation[-]on[-]liability clauses that preclude various types of damages . . . are typically enforceable." *Accountable Health Sols., LLC v. Wellness Corp. Sols., LLC*, 333 F. Supp. 3d 1133, 1156 (D. Kan. 2018) (quoting *eCommerce*, 2013 WL 5621678, at \*45).

BHMI argues that the district court's interpretation renders a fundamental term of the contract "illusory or meaningless." *See Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. 1992). BHMI argues that EWS's rental payments to BHMI for use of the Software is a fundamental term of the Lease Agreement. BHMI contends that the district court's interpretation enables EWS to use the limitation-of-liability clause as a "get out of jail free card" and "never be liable for breach of contract for non-payment." Appellant's Br. at 20 (internal quotation marks omitted). BHMI contends that "[t]his would be an absurd and unreasonable result that no commercially reasonable person would have accepted when entering into the contract." *Id.* at 27. We disagree.

When drafted and executed, both BHMI and EWS stood to benefit from the limitation-of-liability clause depending upon how contract performance unfolded. BHMI, at the time, believed that it was in its best interest to enter into the agreement as written. During oral argument, counsel for BHMI explained that the limitation-of-liability clause was "a boilerplate provision in software contracts" that was included because "a 50-person software firm in Omaha, Nebraska isn't going to be able to handle a 500-billion-dollar lawsuit if the system goes down." Oral Arg. at 5:20–34. In other words, the limitation-of-liability clause would operate as BHMI's "get out of jail free card" if it was sued for nonperformance. Appellant's Br. at 20 (internal quotation marks omitted). If the Software malfunctioned, EWS's damages would be limited to recovering the lease fees paid. This is not an absurd result; rather, it is the result that the parties contemplated when they entered the Lease Agreement.

*See Yatra Online, Inc. v. Ebix, Inc.*, No. CV 2020-0444-JRS, 2021 WL 3855514, at *9 (Del. Ch. Aug. 30, 2021) (unpublished) ("[W]hen parties include a provision stating that there shall be no liability on the part of either party upon termination, they alter the common law rule and broadly waive contractual liability and all contractual remedies." (cleaned up)), *aff'd*, 276 A.3d 476 (Del. 2022); *see also* R. Doc. 11-1, at 4 ("Each party's total liability under this agreement . . . shall not exceed the fees paid by [EWS] to BHMI . . . *even if the actual damages are greater than the fees paid*." (capitalization altered and emphasis added)).

Therefore, BHMI has not shown that the district court's interpretation of the limitation-of-liability clause was a commercially unreasonable result that no party would have agreed to. Instead, BHMI and EWS were two sophisticated parties who agreed to limit their liability in a commercially reasonable manner. *See Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010) (en banc) (explaining that a court may "not rewrite the contract to appease a party who later wishes to rewrite a contract [it] now believes to have been a bad deal"); *see also DeLucca v. KKAT Mgmt., L.L.C.*, No. CIV.A. 1384-N, 2006 WL 224058, at *2 (Del. Ch. Jan. 23, 2006) (unpublished) ("[I]t is not the job of a court to relieve sophisticated parties of the burdens of contracts they wish they had drafted differently but in fact did not. Rather, it is the court's job to enforce the clear terms of contracts.").

## B. *Unconscionability*

The doctrine of unconscionability is a "countervailing principle[]" to the freedom of contract. *See James v. Nat'l Fin., LLC*, 132 A.3d 799, 813 (Del. Ch. 2016). "Unconscionability is a concept that is used sparingly." *Id.* at 814 (internal quotation marks omitted). "A finding of unconscionability generally requires 'the taking of an unfair advantage by one party over the other.'" *Id.* (quoting *Tulowitzki v. Atl. Richfield Co.*, 396 A.2d 956, 960 (Del. 1978)). In other words, "the party with superior bargaining power used it to take unfair advantage of his weaker counterpart." *Id.* (quoting *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 912 (Del. 1989)). "For a contract clause to be unconscionable, its term must be so one-sided as to be oppressive." *Graham*, 565 A.2d at 912 (internal quotation marks

omitted). Importantly, the determination of "[w]hether a contract is unconscionable is determined at the time it was made." *James*, 132 A.3d at 814. "Because contractual limitations upon remedies are generally to be enforced unless unconscionable, the party claiming unconscionability has the burden of proof." *Pig Improvement Co. v. Middle States Holding Co.*, 943 F. Supp. 392, 401 (D. Del. 1996) (citation omitted).

BHMI has not carried its burden to show that enforcement of the plain language of the limitation-of-liability clause would be unconscionable. Here, BHMI drafted a Lease Agreement that two sophisticated parties negotiated at arm's length and ultimately signed. BHMI, as the drafter, had at least equal bargaining position and inserted an unambiguous limitation-of-liability clause. The limitation-of-liability clause was plainly set out in the Lease Agreement with a conspicuous title and the language in all caps. Moreover, BHMI admitted that the limitation-of-liability clause, at the time it was drafted, was a boilerplate provision that served to protect them against liability if the Software failed or malfunctioned in any way that caused damage to EWS. At the time it was drafted, the clause contemplated that either side would benefit from it, with the breaching party potentially benefiting more. The limitation-of-liability clause, at the time it was drafted, was not unconscionable. The district court did not err in finding that the cap on damages was enforceable.[5]

## C. *Failure of Essential Purpose*

"Delaware law provides that limitation[-]of[-]liability provisions will not be enforced where circumstances cause the limited remedy to 'fail of its essential purpose.'" *OC Tint Shop, Inc. v. CPFilms, Inc.*, No. CV 17-1677-RGA, 2018 WL

---

[5]The district court found that the cap on damages would independently bar BHMI's claim. BHMI does not challenge that determination on appeal. Therefore, we need not reach the district court's secondary analysis of the categorical limitation upon our finding that the cap on damages is enforceable and bars BHMI's claim for damages. *See J.B. Hunt Transp., Inc. v. BNSF Ry. Co.*, 9 F.4th 663, 667 (8th Cir. 2021) ("We may affirm on any ground supported by the record." (internal quotation marks omitted)).

4658211, at *4 (D. Del. Sept. 27, 2018) (unpublished) (quoting Del. Code Ann. tit. 6 § 2-719(2)). "The 'fails of its essential purpose' standard applies in cases decided under Section 2–719 of Title 5A of the Delaware Code, Delaware's version of the Uniform Commercial Code." *eCommerce*, 2013 WL 5621678, at *46. This provision imposes a "test of reasonableness" for limitation-of-liability provisions to ensure that a party may receive damages when it "does not get the benefit of the bargain." *OC Tint Shop*, 2018 WL 4658211, at *4 n.1.

The district court determined that the Lease Agreement was not a contract for the sale of goods under the UCC, and therefore the "fails of its essential purpose standard" did not apply. R. Doc. 21, at 31 (internal quotation marks omitted). BHMI argues that determining whether a contract falls under the UCC is a factually intensive inquiry, and therefore, the district court erred by deciding the question at the motion-to-dismiss stage. However, we need not decide whether the district court did so because BHMI's underlying argument under § 2-719 fails regardless. Assuming without deciding that the UCC would apply to this contract, the limitation-of-liability clause does not cause the Lease Agreement to fail of its essential purpose.

> In determining whether the contract limitation fails of its essential purpose, the facts and circumstances surrounding the contract, the nature of the basic obligations of the party, the nature of the goods involved, the uniqueness or experimental nature of the items, the general availability of the items, and the good faith and reasonableness of the provision are factors which should be considered.

*J. A. Jones Constr. Co. v. City of Dover*, 372 A.2d 540, 549 (Del. Super. Ct. 1977).

Here, from BHMI's perspective, the Lease Agreement served to provide rental payments to BHMI for EWS's acceptance and use of the Software. BHMI did not ultimately install the Software and therefore did not trigger the Acceptance Period and EWS's ensuing obligation to make rental payments. *See* R. Doc. 11, at 3–4. BHMI's Software customization and configuration work was fully

compensated under the terms of the VSA. *Id*. at 3. Therefore, BHMI received the benefit of the bargain under the Lease Agreement for the work it completed. We reject BHMI's contention that it did not receive the benefit of its bargain (rental payments) for performance it did not render (installation of the Software) under the Lease Agreement. Accordingly, the Lease Agreement did not "fail of its essential purpose." Here, applying the limitation-of-liability provision was reasonable. *See J. A. Jones Constr.*, 372 A.2d at 552 (holding that application of § 2-719 requires that the "limitation of liability provisions must meet the test of reasonableness if it is to be given effect"). We discern no error in the district court's rejection of BHMI's argument under § 2-719.

### III. *Conclusion*

For the foregoing reasons, we affirm the district court.

_____